LEWIS B. JUDSON

*v.*

HIRAM GOOKWIN.

1. PROMISSORY NOTE—*guaranty*—*effect thereof.* An endorsement of a promissory note by the payee in this form, "I guaranty the collection of the within note," is nothing more than a simple assignment, for, by the Statute, the assignor, in every case, unless restricted by the terms of the assignment, undertakes that the note can be collected, and if it cannot be, then he will pay it.

2. GUARANTY—*what is.* By the phrase, "I guaranty the collection of the within note," the liability of the endorser is neither increased nor diminished.

3. SAME—*when consideration necessary.* Though the guaranty is made long after the execution of the note, if made by the payee, no consideration therefor need be averred.

4. DILIGENCE—*when endorser liable.* On such an endorsement, if due diligence to collect the note is shown, the endorser is liable.

5. ASSIGNEE—*where to sue.* An assignee of a negotiable note is not bound to sue the maker out of the county where the maker resides.

6. SAME—*to what diligence bound.* Ordinary diligence to collect is all to which the assignee of such paper is bound.

APPEAL from the Circuit Court of Kendall county; the Hon. MADISON HOLLISTER, Judge, presiding.

This was an action of assumpsit in the Kendall Circuit Court, by Hiram Goodwin, against Lewis B. Judson, as endorser of a note of the terms following:

$586.33.                          OSWEGO, *18th Dec., 1857.*

Four years after date, I promise to pay to the order of Lewis B. Judson, five hundred and eighty-six 33-100 dollars, at the County Clerk's office, with interest after due at ten per cent., value received.

E. G. AMENT.

On which note was this indorsement:

I guarantee the collection of the within note.

L. B. JUDSON.

The opinion of the court sufficiently states the nature of the pleadings.

There was a trial, and verdict for the plaintiff for seven hundred and seven 14-100 dollars, a motion for a new trial made and overruled, and exception taken, and judgment entered on the verdict, from which this appeal is prosecuted.

Much testimony was taken to show the ability of the maker to pay the note at its maturity, which it is unnecessary to give in detail. It was all considered by the jury, as was also the testimony on the question of diligence.

After the plaintiff had rested his case, the defendant moved the court to exclude the guaranty from the jury, for the reason that, from the plaintiff's own showing, the guaranty was made to Jerome Dygert, and not to the plaintiff, and being a special and limited guaranty, was not negotiable, and hence the plaintiff had not shown that he was entitled to an action in his own name as against the defendant, which motion the court overruled, and the defendant excepted. He also moved the court to exclude the note from the jury, which the court also denied, and to which the defendant excepted. It appeared in evidence, that Judson transferred the note to Dygert.

The testimony of several witnesses was had, as to the plaintiff's being able to institute a suit against the maker of the note at a time earlier than he did commence the suit, the particulars of which testimony it is not material to give.

The weight of the evidence, on the point of the collectibility of the note of Ament, the maker, was decidedly against the defendant, in the opinion of the jury. Deeds of trust, mortgages and judgments against Ament, were proved to the jury, and he himself testified to his inability to pay the note, and that it could not be collected by process of law.

The following instructions were given to the jury on the part of the plaintiff:

o

1. The jury are instructed that if they believe, from the evidence, that Edward G. Ament was a householder, and had a family with which he resided from the 1st day of September, A. D. 1862, until the 26th day of December following, then he was by law entitled to the following property as exempt from sale on execution during that time, to wit: *First*, Necessary beds, bedsteads and bedding; the necessary utensils for cooking; necessary household furniture, not exceeding in value $15; one pair of cards, two spinning wheels, one weaving loom and appendage, one stove and the necessary pipe therefor, being in use by Ament's family. *Second*, One milch cow and calf, two sheep for each member of his family, and sixty dollars worth of other property suited to the said Ament's condition or occupation in life, to be selected by him. *Third*, Necessary provisions and fuel for the use of the family of the said Ament for three months, and the necessary food for the stock above exempted from sale. And also the homestead of the said Ament, not exceeding in value $1,000. And the jury are instructed that, in arriving at the value of property in the possession of Ament between the 1st day of September, 1862, and the 26th of December following, they shall exclude from their computation of value the value of the exempted property.

2. If the jury believe, from the evidence, that the plaintiff instituted a suit in the Circuit Court in the county in which Edward G. Ament resided, on the note in controversy, at the first term of said court after which the note matured, and prosecuted said suit to judgment against said Ament with all reasonable diligence, and that after said judgment was obtained, the plaintiff, with reasonable diligence, caused an execution to be issued out of the said court on said judgment, and placed the same in the hands of the sheriff of that county, then if the sheriff was unable, during the life of that execution, to find property to satisfy the same, or any portion thereof, belonging to the said Ament, then the plaintiff is entitled to recover, unless the jury believe, from the evidence,

that Ament during that time had property out of which to satisfy the same, over and above that which was exempt by law.

3. The jury are instructed that a debtor, in failing circumstances, has the right to select which of his creditors he will pay or secure; and if they believe, from the evidence, that Ament, on the 3d day of September, A. D. 1862, executed chattel mortgages to Matlock, Leopold and Morgan, and in August of that year one to Johnston—to secure a *bona fide* indebtedness to each—which mortgages were recorded in the recorder's office of Kendall county prior to the judgment of the plaintiff against him, then they became a prior lien upon the property contained in the mortgages over the plaintiff's judgment or execution which might have been issued on the same.

4. The jury are instructed that, to constitute a delivery of a deed, it is not necessary that it should be to the grantee mentioned in the deed, but it may be to a stranger, and the grantee's acceptance will be presumed under the following circumstances :—If the deed be beneficial to the grantee— that the grantor parted with all control over the deed—and that the grantor, at the time of the delivery, by declaration, intention or intimation, declares it to be for the use of the grantee, and that the grantee has eventually accepted the deed. Then if the jury believe, from the evidence, that Edward G. Ament delivered the Leopold Matlock and Morgan mortgages to the witness, McKinney, upon the occurrence of the above circumstances, the delivery is good, and the mortgages on that question can hold the property.

5. The jury are instructed that the plaintiff in his attempt to collect the note of Ament he was not required to use the greatest amount of diligence possible, but only ordinary diligence, such as is used by a careful, vigilant and prudent man in the conduct of his own affairs.

6. The jury are instructed that if any of Ament's property was in Ogle county at the time the execution was in Sheriff

Ladd's hands, and so remained during the life of the execution, then the plaintiff was excused from attempting to collect his debt out of that property while it so remained in Ogle county, unless the defendant has shown that the plaintiff knew of its whereabouts.

7. The jury are instructed that the interest of Ament and the chattel mortgages in question could not have been seized and sold on a subsequent execution as against the interest of the mortgagee therein mentioned, if they believe them, from the evidence, to be valid and *bona fide*, and were given in good faith to secure a *bona fide* debt.

To the giving of these instructions, the defendant, by his counsel, then and there excepted, in general terms, without specifying wherein the instructions were wrong.

And the defendant, by his counsel, asked, and the court gave, the following instructions :

1. The plaintiff was bound to prosecute his suit against the maker of the note, with reasonable diligence, not only to judgment but to satisfaction; and if he has failed to use reasonable diligence, he cannot recover.

2. The intention of the law is, that the amount shall be made from the maker of the note if by reasonable diligence that can be done.

3. Reasonable diligence means such diligence as a prudent man would exercise in the conduct of his own affairs.

4. If, for the want of such diligence, the money is not collected of the maker, it is designed that the loss should fall upon the holder of the note.

5. If the jury believe, from the evidence, that the chattel mortgages in question were made and recorded at the same time, and in the absence of all the mortgagees, and if they further believe, from the evidence, that some of the chattel mortgages were made to persons to whom no debt was due, and some of them wholly upon property to which the mortgagor, Ament, claimed no title whatever, and all delivered

to the recorder at the same time, these facts may be properly considered by the jury in determining whether or not the intent of Ament in making them was fraudulent, and if they find his intent was fraudulent and wholly for the purpose of hindering and delaying creditors, then the property described in them would not be in any way protected by them from the execution of the plaintiff.

6. If the jury believe, from the evidence, that the maker of the note, Edward G. Ament, had property in possession of value beyond incumbrances upon it, the mere obtaining of a judgment against said Ament, and placing an execution in the sheriff's hands, is not sufficient diligence, where there has been no levy or sale, but it was the duty of the plaintiff to have the execution levied upon such property, and to have it offered for sale, and if any others set up claims to it, it was the duty of the plaintiff to contest such claims, and if he fails to do so, he is bound to show that the incumbrances were valid and that nothing could be realized on the property to apply on his execution, and if he has not done so, the law upon that point is for the defendant.

7. If the jury believe, from the evidence, that the plaintiff, by reasonable diligence, might have known of property of Edward G. Ament, the maker of the note, not exempt from execution, sufficient to satisfy the debt at the time the execution was in the sheriff's hands, the plaintiff cannot recover in this case.

8. Although the jury believe, from the evidence, that executions in the other cases against Edward G. Ament were returned "no property found," such returns would not, so far as this case is concerned, prove that Edward G. Ament was at the time insolvent, or that proceeding by due diligence in this case would have been unavailing.

9. The jury are instructed that a sheriff's return on an execution is only *prima facie* evidence of the statement therein contained, and may be contradicted by other evidence.

10. If the jury believe, from the evidence, that the sheriff called on Edward G. Ament while he had the execution against him, in favor of the plaintiff, Hiram Goodwin, and asked for property on which to levy, and if they further believe, from the evidence, that Edward G. Ament falsely and intentionally denied that he had any property on which which the same could be levied, and if they further believe, from the evidence, that the said Ament then had property not specifically exempt from execution, and kept it out of the way of the sheriff, and falsely denied having it to the sheriff, then, in the law, he was not entitled to any of the benefit of the law exempting property from execution, and the sheriff would have been justified in levying on the same.

11. The executions given in evidence were not kept by the sheriff during the full life of the same before the commencement of this suit, and are not, therefore, of themselves *prima facie* evidence of the insolvency of Ament, the defendant in the execution.

12. If the jury believe, from the evidence, that any of Ament's property was in Ogle county at the time of the placing of the executions in the hands of the sheriff, yet if the same was returned to Kendall county before the 24th day of December, 1862, it was bound by the execution from the time of its return to Kendall county.

These were all the instructions given in the case for plaintiff or defendant.

The defendant asked the court to give the following instructions, which were refused :

If the jury believe, from the evidence, that the chattel mortgages given in evidence were made in the absence of the mortgagees, and without their knowledge or request, and if they further believe, from the evidence, that the chattel mortgages were delivered at the recorder's office of Kendall county, with a direction to the recorder not to record them if an execution had been issued against the said Ament.

and if they further believe, from the evidence, that in case an execution had been issued, the said Ament intended to retain the control of the chattel mortgages, then the delivery of said chattel mortgages to the recorder was not such a delivery as would render them operative liens upon the property described in them.

If the jury believe, from the evidence, that the one hundred and twenty-seven acres described as follows :—N. E. ¼, S. 3, T. 36, R. 7 E, 3d P. M., excepting eight acres deeded to trustees of schools, fifteen acres deeded to Reed Ferris, eight 47-100 acres deeded to J. J. Grooms, is one connected farm and homestead owned by Edward G. Ament; that he is a householder, the head of a family, and residing with the same, and has so resided in a house on, and occupied the said described tract for the term of over thirty years, occupying and claiming the whole as a homestead, and is now occupying the same as such, then the mortgage given to Orrington Lunt, and given in evidence, containing no waiver of said homestead, is no lien or incumbrance upon the same, ᵕand if of value over one thousand dollars, after paying other legal incumbrances upon it, it would have been liable to the plaintiff's execution, unless the mortgage was for the purchase money or improvement of the premises.

If the jury believe, from the evidence, that the chattel mortgages given in evidence were made by Edward G. Ament, not for the purpose of, in good faith, securing *bona fide* creditors, but for the purpose to hinder and delay the plaintiff, Hiram Gookwin, from collecting a judgment against him, and if they further believe, from the evidence, that the said chattel mortgages were made in the absence, and without the request of the mortgagees, and that they were never informed of the same till after the issue of the plaintiff's execution, then the said mortgages are fraudulent and void, and no incumbrance upon the property described in them.

If the jury believe, from the evidence, that some of the property mentioned in the chattel mortgage to Daniel Johnston, was in Ogle county, and some in Kendall county, and

if they further believe, from the evidence, that the property mentioned in that mortgage was more than sufficient to pay the same, then the sheriff would have a right to levy on the excess over the mortgage in Kendall county and require the said Johnson to resort to the property in Ogle county to the extent of its value for the satisfaction of his mortgage.

And to the decision of the court in refusing these instructions, the defendant, by his counsel, then and there excepted.

The following are the errors assigned on the record :

The court erred in giving the instructions, and each of them, as asked by the plaintiff.

In refusing the instructions asked by defendant.

In excluding evidence offered by defendant, and in admitting evidence offered by plaintiff.

In overruling the motion for a new trial, and rendering judgment on the verdict.

The verdict and judgment are not warranted by the evidence.

Messrs. LELAND & BLANCHARD argued for the appellant, and made the following points :

If the guaranty was admissible at all, it was under the fourth count of the declaration.

The second count, if it can be called a count on the guaranty, does not state facts constituting a cause of action. In a guaranty of collection, an attempt to collect by suit is a consideration precedent. *Newton* v. *Harrington*, 24 Ill., 206 ; *Taylor et al.* v. *Ballou*, 6 Cowen, 624.

A guaranty of the collection of a note is a special contract between the parties to it, which is not assignable, so that an action can be maintained in the name of the assignee. The contract of guaranty was between Judson and Dygert. The case of *Lamoraeux* v. *Hewitt*, 6 Wend., 307, was directly in point, that the cause of action is in Dygert, not Gookwin.

They contended that the law was well settled, that Gookwin could not, as assignee of the contract of guaranty, maintain an action on it. They conceded that the name of Judson, with the guaranty over it, might have authorized words of assignment to be also written over his name. In case of a mere endorsement, they said, there may be an action maintained against the endorser, without suit against the maker, but not so in case of a guaranty of collection, referring to *Taylor* v. *Binney*, 7 Mass., 479; *Hunt* v. *Brown*, 5 Hill, 145; *True* v. *Faller*, 21 Pick., 140; *Vanduser* v. *Wright*, 6 Barb. S. C. R., 547; *Brown* v. *Gilman*, 13 Mass., 158; *Kitchell* v. *Burns*, 24 Wend., 456.

The guaranty of the note was long after its date, and Dygert could not have maintained an action, without alleging and proving a consideration. *Joslyn* v. *Collinson*, 26 Ill., 61. No consideration has been proved from Gookwin.

They argued also, that no legal diligence was shown to collect the note of Ament. They contended that Gookwin was bound to show the utmost degree of diligence in time, and if he delayed one day after the note was due, he did it at the peril of getting service for the term, or showing that issuing it earlier would have been unavailing, citing *Chalmers* v. *Moore*, 22 Ill., 359; *Robinson* v. *Olcott*, 27 Ib., 181; *Roberts* v. *Haskell*, 20 Ib., 59; *Allison* v. *Smith*, Ib., 104; *Nixon* v. *Weyhrich*, Ib., 600; 2 Scam., 582; *Hilborn* v. *Artus*, 3 Ib., 344; *Allison* v. *Waldham*, 24 Ill., 132; *Joslyn* v. *Collinson*, 26 Ib., 62.

The diligence by execution, they insisted, was not sufficient.

They objected to the fourth instruction given for the plaintiff, as not containing the law applicable to the case, because it appeared that the mortgages were not accepted by the mortgagees prior to the time when the lien of the execution attached. They also insisted that the first instruction was calculated to mislead the jury, especially when taken in connection with the second. The statute does not exempt the value of the articles, but the articles themselves.

Mr. L. R. WAGNER argued for the appellee on the evidence at great length, and made these points :

That the note having been assigned by Judson, the payee, to Dygert, with a guaranty of its collection, it was negotiable under the Statute, citing *Clifford* v. *Keating*, 3 Scam., 254. He said the contract of assignment could not be severed from that of guaranty—they are one contract, and necessarily pass to each subsequent assignor without severance, citing *Heaton* v. *Hulbut*, 3 Scam., 489 ; *Watson* v. *McLaren*, 19 Wend., 557.

He then argued the instructions, and insisted that the first and third, asked by appellant, were properly refused.

He insisted plaintiff's first instruction was not calculated to mislead the jury, especially when taken in connection with the tenth instruction.

As to the plaintiff's fourth instruction, he contended that it was applicable to the case. The Matlock and Morgan mortgages were delivered to the recorder for the mortgagees, of which they were informed. The question of their delivery was one of fact, and was fairly left to the jury by the instruction.

He said this was not a case where courts hold that the greatest amount of diligence possible must be used. The degree of diligence was correctly stated in the instructions, citing *Wilson* v. *Van Winkle*, 2 Gilm., 684; *Rossler* v. *Morgan*, 2 Scam., 561 ; *Carrols et al.* v. *Litchfield*, 2 Scam., 357; *Pierce* v. *Short*, 14 Ill., 146.

Mr. JUSTICE BREESE delivered the opinion of the court:

Two questions are presented by this record. *First*, Was the guaranty of Judson negotiable ? and *Second*, Was due diligence used by the endorser to collect the note of the maker ?

The note was in the following form : .

$586.33.                               Oswego, *18th Dec., 1857.*

Four years after date, I promise to pay to the order of Lewis B. Judson, five hundred and eighty-six 33-100 dollars, at the County Clerk's Office, with interest after due at ten per cent., for value received.

E. G. AMENT.

Oswego, *Dec. 3, 1858*

I guarantee the collection of the within note.

L. B. Judson.

The first count of the declaration is upon the guaranty of the note, to which a demurrer was sustained. The second count was upon the guaranty of the note also, with an allegation of the insolvency of the maker, when the note became due, and that a suit would have been unavailing. The third count was upon the endorsement of the note, and the institution of a suit against the maker, with a return of an execution "*nulla bona*" and inability to find property, after diligent search. The fourth was the common money count.

To the declaration, the general issue was pleaded, and a trial, verdict and judgment for the plaintiff, and the case brought here by appeal, where it is assigned for error:

1.   Giving plaintiff's instructions
2.   Refusing instructions asked by the defendant.
3.   Excluding evidence offered by defendant below, and admitting evidence offered by the plaintiff.
4.   The verdict against the evidence.
5.   Overruling the motion for a new trial.

The only points pressed upon the attention of the court by the appellant are those arising upon the instructions, separate and apart from the liability of the appellant to any judgment in this action.

No objection is taken to the declaration, but it is assumed by appellant that he is not liable to the appellee on his endorsement; that it is a special contract of guaranty, and as

such, not negotiable, so that an action can be maintained in the name of the assignee.

It will be observed, the endorsement is not by a third party, but by the payee of the note, and by which he *undertakes that the note is collectable. It is nothing more than an assignment of the note, without the guaranty, for by the assignment, under our Statute, the assignor undertakes that the note can be collected, and if it cannot be collected, that he will pay it. By the phrase, "I guaranty the collection of this note," his liability, as endorser or assignor, is neither increased nor diminished. *Heaton* v. *Hulbert*, 3 Scam., 489; *Childs* v. *Davidson*, decided at this term. Without the guaranty, he would be liable, under section 7 of chapter 73, to any assignee into whose hands it might come, if the assignee has used due diligence to collect the money of the maker by suit, or can show that the institution of a suit would have been unavailing. Scates' Comp., 291. The guaranty was not to Dygert, or to any one in particular, but was general.

The idea, that as the endorsement was long after the execution of the note, it is incumbent on the appellee to prove a consideration, has no force, for the reason, the endorsement is by the payee of the note. The case of *Joslyn* v. *Collinson*, 26 Ill., 61, was where a stranger, a third party, had guaranteed the note after its execution and delivery to the payees. There, proof of a consideration was held necessary, and such is the tenor of all the cases on this subject. Here the guarantor or endorser undertook no more than was imposed on him by law. He was liable under the Statute, if diligence by suit could not get the money from the maker.

This being then nothing more than a statutory endorsement, the right of action is perfect in the assignee of the note to recover of the endorser.

On the other point, we are of opinion due diligence to collect the money of the maker has been fully shown. The diligent and honest prosecution of a suit to judgment, with a

return *nulla bona,* has always been considered as one of the best tests of due diligence. It seems to us, the appellee used every means an ordinarily cautious and diligent man, desirous of collecting a debt would use, to collect this note.

It was urged by appellant, that the appellee should have brought suit against the maker, when he saw him in Aurora, in Kane county. At this time he had brought suit, then pending in Kendall county, the county of the maker's residence, and had he brought another in Kane, the pendency of the suit in Kendall could have been pleaded in abatement, and he would have incurred the expense of the suit uselessly. He was not required to sue in any county, other than in the county of the residence of the maker.

The ability to pay this note and judgment thereon, by Ament, was left to the jury under a mass of testimony which we think fully justified them in finding he had no property liable to execution out of which this debt could be made.

Ament had a right to prefer creditors, and the *bona fides* of all these transactions, and all his acts to that end, were fairly left to the jury. It is possible some trifle might have been made out of the wreck of his property by extra diligence. Ordinary diligence failed to accomplish anything, and this was all to which the appellee was bound.

As to the instructions, we have examined them carefully, and are of opinion, that those asked by the defendant, and refused, are substantially embraced in those given for him. The instructions taken together, lay down the law of the case, and are so full on all the points presented, the jury could hardly have been misled by any one of them, as they had them all before them.

Perceiving no error in the record, the judgment must be affirmed.

*Judgment affirmed.*