# ALFRED BOOTH

*v.*

# AUGUSTUS STORRS *et al.*

1. ASSIGNOR—*diligence required of an assignee.* In an action by the assignee against the assignor of a promissory note, wherein it was alleged that the institution of a suit against the makers would have been unavailing, it appeared the makers thereof had committed acts of bankruptcy, and a petition had been exhibited against them in the United States district court for the Northern district of Illinois, and an assignee appointed, who had taken possession of their estate: *Held,* the rule of diligence imposed by the statute upon the assignees of promissory notes, in order to fix the liability of assignors, did not require the plaintiff to present his claim in the district court; and he was not, by reason of not having done so, chargeable with such laches as exonerated defendant from liability as assignor.

2. The presentation of the note by the assignee thereof, in the bankruptcy proceeding, would not be a suit against the makers, or their heirs, executors or administrators, in the sense in which the term is used in the statute, which requires a suit against the maker, etc. *for the recovery of the money or property due thereon, or damage in lieu thereof,* these latter words being descriptive of a personal action.

3. The statute only requires that the assignee of a note, before he can proceed against the endorser, shall use due diligence by proceeding at law against the maker; and the proceedings at law were intended to be in the courts of law in this State.

4. He is not required to go into a foreign jurisdiction; and the district court of the United States being created and acting under another sovereignty, the assignee can no more be required to resort to such court, than to proceed against the property of the maker in a sister State.

5. PRACTICE *in the Superior Court of Chicago—trying a cause out of its regular order.* Under the rule of the Superior Court of Chicago, providing that certain cases may be tried out of their order, upon the filing of an affidavit by the plaintiff, or his attorney or agent, that he or she believes the defense is made for delay, and by giving notice, etc. unless it shall be made to appear to the court, by affidavit of facts in detail, that the defense is made in good faith, the only question to be determined, is, the face of the pleadings presenting a legal defense, whether the defense is set up in good faith.

6. And the failure of the defendant to verify his special plea, by his own affidavit, when the plea is of a nature not required by law to be so verified,

is not a good and sufficient cause for directing the case to be tried out of its order, within the meaning of the special practice act, the court, in such case, having no power to require it.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

The opinion states the case.

Messrs. SLEEPER & WHITON, for the appellant.

Messrs. THOMPSON & BISHOP, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was an action of assumpsit, brought to the June term, 1870, of the Superior Court of Chicago, by appellees, as assignees, against appellant, as assignor and guarantor of a promissory note made by Barnum, Mason & Co. bearing date at Chicago, August 2, 1869, whereby they, nine months after date, for value received, promised to pay to the order of appellant, the sum of $176.66, at Manufacturers' National Bank, Chicago, with interest at seven per cent, and endorsed by appellant.

The declaration contains three counts, the first two of which set out the contract and liability of the assignor, alleging that the institution of a suit against the makers would have been unavailing, on account of their insolvency, and the third count seeks to charge appellant as guarantor.

Appellant filed the general issue, with affidavit of merits, to the whole declaration, and to the first two counts against him, as assignor, the following special plea:

Special plea to first and second counts alleges that Barnum, Mason & Co. when they made the note described in said counts, were possessed of goods, wares and merchandise, book accounts, and choses in action, amounting to $18,000; that on December

17, 1869, and before those notes became due, they committed sundry acts of bankruptcy; that a petition was filed against them by certain of their creditors, in the district court United States, Northern district of Illinois; that January 26, 1870, they were declared bankrupts, and the marshal of the United States, by virtue of a warrant issuing out of that court, seized and took possession of their property; that, April 12, 1870, an assignee was elected by the creditors of Barnum, Mason & Staring, who duly qualified and took charge of their property and assets, and now holds the property and effects for the benefit of the creditors of said Barnum, Mason & Staring; that plaintiffs have not used the diligence to recover of Barnum, Mason & Staring the amount of the note by the institution of a suit against them; that the plaintiffs were creditors of Barnum, Mason & Co. and when the note became due, and before any dividend had been declared or paid by the assignee of said Barnum, Mason & Staring, did not, nor would, prove the same in the said United States court, as provided for by the act of congress, and did not, nor would, in any way or manner, endeavor to avail themselves of the dividends of the proceeds which would arise out of the estate of said bankrupts; that had they, or would they, prove their claim in said bankrupt proceedings, they would realise sufficient to pay the greater part of their said note.

To this plea appellees interposed a general demurrer, which was sustained by the court.

Appellant filed another special plea to all the counts, in substance as follows: That, before the time of the making of said note and endorsement in the declaration mentioned, and on the twenty-second day of July, 1869, a firm doing business under the name of C. A. &. C. H. Barnum & Co. were largely indebted to divers firms, etc. in the city and State of New York, among whom were the appellees, to whom they owed $1200, and which they were unable to pay, they being insolvent; that, on the day aforesaid, at said city of New York,

appellees entered into an agreement, in writing, with said Barnum & Co. whereby appellees agreed with Barnum & Co. in consideration of their insolvency, and that C. A. Barnum, J. D. Mason and J. B. Staring, members of said firm, would make their promissory notes for fifty per cent of said claim, maturing in six, nine and twelve months after date, with seven per cent interest, and procure appellant to endorse the same, they, the appellees, would accept and receive the said notes in full satisfaction and payment of said claim; that Barnum & Co. afterwards, and on the second of August, 1869, in pursuance of said agreement, made and executed these notes, among which was the said note in said declaration mentioned, and appellant endorsed them, and they were delivered by said firm to appellees, in the city and State of New York, and appellees accepted them on account of said claim, and for no other purpose whatever; that, in pursuance of the terms of said agreement, appellant contracted and assumed, with appellees, the liabilities of an accommodation endorser; that said contract of endorsement was made in said city of New York, where the same was delivered to and accepted by appellees, in manner aforesaid, for the purposes aforesaid, and not in the State of Illinois, as alleged in the declaration; that, at the time the notes were made and became due, the law merchant was in force in the State of New York, requiring the holder of a note so endorsed, in order to fix the liability of the endorser, to demand payment of the maker, and if not paid, to notify the endorser of such demand and non-payment; that, when the notes had become due, demand of payment was made at the place where these notes were payable, and payment was refused; but no notice of such demand and non-payment was given to appellant.

To this plea, appellees replied, that the contract of endorsement was made, and said note delivered to, and accepted by, appellees, in the State of Illinois, and not in the State of New York.

476      BOOTH *v.* STORRS *et al.*      [Sept. T.,

Opinion of the Court.

On the twenty-fifth of June, 1870, one of appellees' attorneys filed his affidavit in the cause, that he believed that the defense in said cause was made for delay, and served appellant's attorney with a copy, and notice that the cause would be brought on for trial on the thirtieth, same month. The court not being in session on that day, and, by stipulation, it was agreed by counsel that said notice of trial be considered as for the fifth of July, 1870, of that term. On the latter day, appellant's counsel objected to the trial of the cause out of its order, and filed his own affidavit to prevent such trial, stating, among other things, the agreement made in the city of New York, as stated in the second special plea, the making of the note sued on, with others, in pursuance thereof; that the same was made and endorsed by appellant, to be taken to New York by the makers, and there delivered, upon settlement or compromise being made with appellees; that affiant had been informed by appellant and one of the makers, and he also believed, that said note, with the others, was taken to New York by one of the makers, and there delivered. Affiant also stated in his affidavit, that, at the time of the notice, appellant was out of the State of Illinois, and in California, and still was, and for that reason could not make the affidavit. It set out the laws of New York respecting the liability of endorsers, and non-compliance with those laws on the part of appellees, and that he believed the defense was made in good faith.

The court, notwithstanding this affidavit, allowed appellees' attorneys to bring said cause on for trial, out of its order on the docket, and in the absence of appellant; to which his counsel excepted, and preserved these matters in a bill of exceptions. There was a verdict for appellees, upon which the court entered judgment, and appellant brings the case to this court by appeal, and assigns for error, among other grounds, the decision of the court below in sustaining the demurrer to his first special plea, and in ordering said case to be tried out of its order, as above stated.

We think there was no error in sustaining the demurrer to the first special plea. The theory of this plea is, that because the makers had committed acts of bankruptcy, and a petition had been exhibited against them in the United States district court for the Northern district of Illinois, an assignee appointed, who had taken possession of their estate, the rule of diligence imposed by the statute upon assignees of promissory notes, in order to fix the liability of assignors, required appellees to present their claim to the district court; and not having done so, they are chargeable with laches, which exonerated appellant from all liability as assignor.

The diligence required of an assignee is defined by the statute. It is: "If such assignee, or assignees, thereof, shall have used due diligence by the institution and prosecution of a suit against the maker or makers of such assigned note, etc. or against his, her or their heirs, executors or administrators, for the recovery of the money or property due thereon, or damages in lieu thereof," etc. It is true, as argued by appellant's counsel, that the term "suit" is a very comprehensive one. But there are other expressions in the statute which limit the term as here used. It must be a suit against the maker, or his heirs, executors or administrators. The plea avers, that other creditors of these makers had exhibited their petition in bankruptcy against them. The presentation of this note by the assignees thereof, in that proceeding, would not be a suit against the makers, or their heirs, executors or administrators, in the sense in which the term is used in the statute, because that requires a suit against the maker, etc. *for the recovery of the money or property due thereon, or damages in lieu thereof.* These latter words are descriptive of a personal action.

In *Bledsoe* v. *Graves*, 4 Scam. 382, it was insisted, that the assignee of a note was bound to go into chancery to remove obstructions in the way of an execution against the maker, before he could proceed against the endorser. But the court held otherwise, and said: "It was only necessary that he should have used due diligence by proceeding at law against the maker."

And the proceedings at law were intended to be in the courts of law, in this State. In *Judson* v. *Gookwin*, 37 Ill. 286, it was said, that " he (the assignee) was not required to sue in any county other than the county of the residence of the maker." But it is manifest that he is not required to go into a foreign jurisdiction. The district court of the United States is created, and acts, under another sovereignty, and it might, with just as much propriety, be contended, that the assignee was required to proceed against the property of the maker in a sister State, as that he should resort to the district court of the United States. *Tarbell* v. *Griggs*, 3 Paige, 207.

But we think the court erred in compelling appellant's counsel to go to trial of the cause out of its regular order, under the state of the pleadings, and against the affidavit made by him to prevent it.

This was under a special rule of that court, as follows:

" Ordered, that in any case *ex contractu*, pending on an issue or issues of fact only, or only requiring the *similiter* to be added, which is noticed for trial at any term, if the plaintiff, or any attorney or agent of the plaintiff, shall make an affidavit that he or she believes that the defense is made only for delay, the plaintiff, by giving the defendant's attorney, or the defendant, if he or she do not appear by attorney, five days' previous notice, with a copy of such affidavit, that the plaintiff will bring on said case for trial at the opening of the court, on a day of such term specified in such notice, or as soon thereafter as the court will try the same, may proceed to a trial at the time specified in said notice, unless it shall be made to appear to the court, by affidavit of facts in detail, that the defense is made in good faith, when the case remains to be tried in its regular order on the trial calendar."

The second special plea contains a good defense to all the counts. Plaintiffs below, by their replication, traversed a single fact only, viz.: that of the place of making the contract

of endorsement, thereby admitting of record all other facts well pleaded.

The plea contains the averment, that by the terms of the agreement set out therein, between appellees and the makers of the notes, and in pursuance of which they were given and endorsed, appellant contracted and assumed, with appellees, the liability of an accommodation endorser. This averment was not traversed, and was, therefore, admitted. So that the very facts admitted of record constituted a legal defense to the third count against appellant as guarantor of the note, even if the contract had been made in this State. The agreement, in writing, set out in the plea, was, as is therein averred, made in the State of New York, and appellees resided there, in performance of which these notes were to be given. The plea avers, that the notes were signed here by the makers and the appellant, but delivered to appellees in New York, and sets out the laws of New York as to fixing the liability of endorsers, and the non-compliance therewith by appellees. The only fact in issue, was, as to whether the contract of endorsement was made in New York or here; all others were admitted. In order to prevent the summary trial, under the rule, appellant being absent from the State, Mr. Sleeper, his counsel, presented his own affidavit, in and by which he states positively, that the notes were made here and endorsed by appellant, to be taken by one of the makers to New York, and there delivered, upon a settlement or compromise being made with appellees of their demand against the makers; and that he had been informed by his client and one of the makers, that they were so taken and delivered, and that the defense was made in good faith.

The court below held, that this affidavit was not sufficient to prevent the summary trial under the rule, and permitted appellees' counsel to call up the case out of its regular order, and proceed to trial. That such a practice would operate as a surprise upon a defendant, there can be no doubt. From the facts admitted of record, it is apparent that the special plea in question was not a sham plea. Appellees' attorney, in his affidavit,

did not even state his belief that it was false, but stated that he believed the defense was made only for delay.

The only question the court could determine, under the rule, was, whether the defense was set up in good faith, and in holding that it was not, must have held that it was indispensable that the matters of the plea should be verified by appellant's own affidavit. If a plaintiff, the next day after special pleas are filed, can call upon the defendant to sustain all the averments of his plea by affidavit, it is equivalent to a rule requiring defendants to verify their pleas. But the statute of this State declares, that "the defendant may plead as many matters of fact, in several pleas, as he may deem necessary for his defense." This was designed to take from the court the discretionary power of refusing leave to file several pleas, and the pleas are not required to be verified. If the superior court can, by rule, require the defendant to verify his pleas, the same power would warrant a rule requiring the plaintiff to verify, by oath, his cause of action, and thus change the entire system of practice.

In *Merrington* v. *Becket,* 2 Barn. & Cress. in the King's Bench, the plaintiff obtained a rule *nisi,* that he might be at liberty to sign judgment as for want of plea, upon an affidavit stating that the plea was in every respect false. The court said "that it was very desirable that the proceedings should not be productive of unnecessary expense and delay; but it was equally important that object should be effected without breaking in upon established principles, which would be the effect, if a defendant were to be compelled to verify his plea. If that might be done, the court might be called upon for a rule to compel the plaintiff to verify, by affidavit, his cause of action." The rule was discharged.

In *Smith et al.* v. *Backwell,* 4 Bing. 513, a similar application was made in the court of common pleas. The defendant had pleaded the delivery to, and acceptance by, plaintiff of twenty pipes of port wine, in satisfaction. PARK, Justice, said: "I am of opinion that the court can not do what has been required. We are asked to require that which, except in one instance, has

never been required, namely : that the defendant should verify his plea by affidavit. There is nothing on the face of it absurd or inconsistent in the allegation, that wine has been given in satisfaction of a demand. Here there is only a single plea ; the defendant is under no rule to plead issuably, and we should exceed our jurisdiction if we acceded to the application."

BURROUGH, Justice, said : " I object to this application *in toto*. With respect to pleas in abatement, the statute of Anne has required an affidavit of their truth ; and if it had been thought fit to require an affidavit in other cases, it would have been easy to have so enacted ; but the absence of any such enactment, when the attention of the legislature had manifestly been called to the subject, shows that it was not deemed proper to extend the practice further."

Pleas in abatement, other than to the jurisdiction, are required to be verified by affidavit. The third section of the practice act for Cook county (1 Scates' Stat. 271) requires the defendant in all actions *ex contractu*, to file with his plea an affidavit that he believes he has a good defense to said suit upon the merits. Pleas denying the execution of instruments in writing are also required to be verified. If it had been thought fit to extend this requirement to all pleas, it would have been easy to have so enacted, and, not having done so, the inference is proper that it was not intended to extend the practice further.

The practice act declares, " that all causes shall be tried or otherwise disposed of, in the order they are placed on the docket, unless the court, *for good and sufficient cause,* shall otherwise direct."

The failure of a defendant to verify his special plea by his own affidavit, when the court had no power to require him to do so, is not a good and sufficient cause for directing this cause to be tried out of its order, and the judgment is reversed and the cause remanded.

*Judgment reversed.*