**First National Bank of Harvey, Illinois, Defendant in Error, v. Frank Trott and John W. Blair, Plaintiffs in Error.**

**Gen. No. 29,416.**

1. Judgments—*laches in moving to vacate.* Defendants were not guilty of laches in filing on December 14 a motion to vacate a judgment entered November 20, where it does not appear that the rights of the plaintiff were prejudiced or impaired in any way.

2. Negotiable instruments—*admissibility of parol evidence as to consideration for note.* Under section 16 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 36, parol evidence was admissible to show that the original note signed by defendants in a judgment on a renewal thereof was given without consideration.

3. Negotiable instruments—*consideration for collateral agreement that makers should not be liable on note.* That a bank to which a note was given by defendants desired the note in place of a note of a corporation which the bank examiner objected to was sufficient consideration for an agreement that if defendants would execute their note for that purpose they would never be required to pay it.

4. Appeal and error—*fraud not presumed by reviewing court.* It cannot be presumed on error that a note given by individuals to be used by a bank in place of a corporation note to meet some objection of the bank examiner as to such corporation note was given for a fraudulent purpose.

First Natl. Bank of Harvey v. Trott et al., 236 Ill. App. 412.

Error by defendants to the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1924. Reversed and remanded. Opinion filed April 13, 1925.

BURTON EVANS, for plaintiffs in error.

CATTELL & WALDRON, for defendant in error; GEORGE W. DAMMANN, of counsel.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

The plaintiff, the First National Bank of Harvey, Illinois, entered a judgment by confession for $6,114.16 against the defendants, Frank Trott and John W. Blair, on a promissory note for $5,700 signed by the defendants and payable to the plaintiff.

The defendants made a motion to vacate the judgment and in support of the motion filed affidavits. The affidavits are as follows:

"Frank Trott and John W. Blair, each being first duly sworn, depose and say that they are the defendants in the above entitled cause and that these defendants believe that they have a complete defense to the claim of the plaintiff in the above entitled cause and that the nature of the defense is as follows:

"The First National Bank of Harvey, hereafter in this affidavit called the bank, held a note dated August 1, 1921, and payable to the order of David Wiedermann, Jr., in ninety days after date for the sum of six thousand ($6,000.00) dollars with interest at seven per cent after maturity and signed by the Self Seating Valve Company. This note was secured by collateral which was worth about the sum of six thousand ($6,000.00) dollars and was known to the parties hereto as the Shaw contract.

"On or about April 3, 1922, the bank, by and through its agent, wrote Frank Trott explaining that the bank examiners had objected to the bank having the above mentioned Self Seating Valve Company's note among its assets and the bank by and through

its agent asked Trott to sign a note of six thousand ($6,000.00) dollars which was inclosed with said letter and the bank asked Trott to have one John W. Blair sign said note and there was a clear understanding by and between the bank and Trott and Blair that since neither Trott nor Blair received anything for said note, neither Trott nor Blair would be held on said note but that the bank would use the collateral securing the original note as a source from which to secure payment of this outstanding indebtedness, but the bank, ignoring the agreement with Trott and Blair and the rights of both defendants in the premises, released the collateral securing said note without the knowledge or consent of either one of these defendants and thereby throwing the burden of meeting the note of six thousand ($6,000.00) dollars, dated April 7, 1922 on Trott and Blair.

"On April 7, 1923, Trott and Blair gave the bank their renewal note of the above indebtedness dated April 7, 1923, payable in 120 days after date to the bank's order, for $5,738.00, which was the balance due on the note of April 7, 1922.

"On August 6, 1923, the last mentioned note was canceled and Blair and Trott again executed their new note for $5,700.00 to the bank's order which note was due and payable ninety days after date with interest at seven per centum per annum after date and on which judgment was entered by confession in the November term, 1923, against Blair and Trott for the sum of six thousand one hundred fourteen dollars and sixteen cents ($6,114.16) in favor of the bank.

"Affiants further say that the understanding between the bank and Blair and Trott in reference to each and every one of the foregoing notes on which Blair's and Trott's name appears was that Blair and Trott were not to be asked to pay the notes and that the notes were given merely as a matter of accommodation and that Blair and Trott received no consideration of any kind or character from the bank for the signing of said notes, including the note on which judgment was taken.

"Affiants further say that they at no time consented

to the withdrawal of the collateral security known as the Shaw contract securing the original note and that they at no time knew or had knowledge of the fact that said collateral security mentioned above was withdrawn from the bank in violation of the agreement the bank made with Trott and Blair at the time that the original accommodation note was signed which was on April 3, 1922.

"The affiants therefore pray that the judgment entered in the above entitled cause against Blair and Trott be vacated and set aside and that the defendants be given leave to file their appearances and pleas to the claim of the plaintiff, and that the cause be placed on the calendar for trial.

"John W. Blair under oath further says that all of the agreements mentioned in the defendants' original affidavit of defense as having been made with the First National Bank of Harvey, Illinois, by and through its agent or agents were made by and with David Wiedermann, Sr., cashier and director of said bank, and that all the dealings of every kind and character that these defendants had with said bank were had with David Wiedermann, Sr., and that the agreements and understanding in reference to the Shaw contract, and that these defendants would not be asked or expected to pay any one of the notes bearing Trott's and Blair's signature mentioned in said original affidavit were all made by and with David Wiedermann, Sr., cashier of said bank.

"Frank Trott further says under oath that the note mentioned in the original affidavit of defense dated August 1, 1921, and payable to the order of David Wiedermann, Jr., in ninety days after date for the sum of six thousand ($6,000.00) dollars with interest at seven per cent after maturity and signed by the Self Seating Valve Company was not canceled by the bank in consideration of the note mentioned in said original affidavit and dated April 3, 1922, for six thousand ($6,000.00) dollars, which was the first note signed by Trott and Blair, but that the bank sent said note into the receiver of the Self Seating Valve Company to collect a dividend on it."

The principal question in the case is whether the defendants in their affidavits have set up a meritorious defense.

Counsel for the plaintiff maintain that the defendants were guilty of laches in filing their motion to vacate the judgment, but we do not think there is any merit in this contention. The judgment was entered November 20, 1923, and the motion was filed on December 14, 1923. It does not appear that the rights of the plaintiff were prejudiced or impaired in any way. The rule is that laches, in legal significance, is not mere delay, but delay that works disadvantage to another. 10 R. C. L., sec. 143, p. 396.

The question whether the affidavits of the defendants set up a good defense depends upon the question whether parol testimony is admissible to show the conditions on which the defendants delivered the note to the plaintiff.

This is a question upon which the courts are disagreed. Some courts regard a note as a complete written contract, and hold that extrinsic evidence is inadmissible to show a parol contemporaneous agreement. Other courts regard a note as being so far silent as to the real contract among the original parties, that the introduction of parol evidence is admissible to show what the contract was. 3 R. C. L., sec. 338, pp. 1122, 1123.

In Illinois the general rule at common law, that it is not allowable to vary the terms of a written contract by parol testimony, has been materially modified by the Negotiable Instruments Act; and under that act it is competent to show by parol testimony either a partial or a total failure of consideration for a note. *Gage v. Lewis*, 68 Ill. 604, 614; *Mann v. Smyser*, 76 Ill. 365, 368, 369; *Broadwell v. Sanderson*, 29 Ill. App. 384, 386.

It is also the rule that as between an indorsee and his immediate indorser, parol testimony is admissible

to show that there was no consideration for the indorsement. *Peabody v. Munson,* 211 Ill. 324, 326, 327.

It has been expressly held that section 16 of the Negotiable Instruments Act [Cahill's St. ch. 98, ¶ 36] changed the rule previously existing in Illinois so as to permit parol testimony to be introduced to show the conditions attaching to the delivery of a note. *Straus v. Citizens State Bank of Elmhurst,* 164 Ill. App. 420, 429, 431. In that case, which is similar to the case at bar, the court said (p. 431):

"But appellee contends that under the Illinois authorities the note sued upon in the cross action cannot be shown by oral testimony to have been conditional. We are of opinion that the sections of the Negotiable Instruments Law above quoted must be held to change the rule in this State. To require the conditions attaching to the delivery of the note to be shown by documentary evidence would in our judgment entirely defeat the purpose of the sections above quoted. We are of the opinion that where the circumstances described in said sections exist, it is the intention of said statute that the actual facts may be shown by oral testimony. It follows that in our opinion the agreement by the cashier of the Elmhurst Bank that Straus should not be held liable upon this note and should not be required to pay it is binding upon the Elmhurst Bank and it cannot recover thereon in violation of the terms of said agreement."

This case was affirmed by the Supreme Court (*Straus v. Citizens' State Bank of Elmhurst,* 254 Ill. 185).

In affirming the judgment of the Appellate Court the Supreme Court said (pp. 186, 187):

"The facts as found by the Appellate Court in so far as they apply to the $3,500 note relied upon in the plea of set-off, are, that said note was executed without any consideration and was received by appellant upon an agreement that appellee should never be called upon to pay the same. We are bound by the facts as recited in the final judgment of the Appellate

Court. The only question that is open for consideration in this court is whether the law was properly applied to the facts as found by the Appellate Court. If the note relied on as a set-off was made, executed and delivered to the bank without any consideration and upon the agreement that appellee should never be required to pay said note, it is difficult to see how a recovery could be sustained by the bank. If there was no consideration for the note the bank cannot be a holder in due course for value. There are some propositions that are so well settled and clear that any attempt at argument in support of them is a useless expenditure of time. That a promissory note made and executed without consideration and received by the payee upon an agreement that the maker should never be called upon to pay the same is invalid in the hands of such payee and cannot be enforced against the maker is a proposition of that character.''

In the case of *Cochran v. Bowersox,* 188 Ill. App. 158, which is somewhat analogous to the case at bar, the court said (pp. 159, 165):

''The fourth plea avers that said note was signed by appellee as accommodation maker for and at the instance and request of said bank and E. M. Davis, the real principal; that appellee received no consideration for so signing said note; that said bank promised that said note would not be negotiated, assigned or transferred by it; that said bank in procuring said Bowersox to sign said note as accommodation maker acted through its officers and agents, one of whom was plaintiff, Cochran, who assisted and advised in that behalf, and had full knowledge that said Bowersox signed said note as an accommodation maker, and without consideration, and on said promises not to negotiate, etc.; that after the maturity of said note the same was negotiated to Cochran and received by him with full knowledge of the foregoing facts. * * * If it was accommodation paper and the bank was the accomodated party, the rule is universal that the accommodated party can never recover against the accommodating party, and the note being non-

negotiable and merely being executed for the purposes of accommodating the bank in covering up the indebtedness of Davis, for the purpose of passing a bank examination, and Cochran having taken this note after maturity with full knowledge of these conditions, and also of the restriction that the note should not be negotiated, and the jury having found for appellee on these issues, we think that a complete defense to the note has been made.''

The fact that in the case at bar a renewal note was given by the defendants for their original note would not change the rule in regard to showing what was the real consideration for the original note of the defendants.

In the case of *Wheelock v. Berkeley,* 138 Ill. 153, the court said (pp. 156, 157):

''Whether a subsequent note is given in payment of or only renewal of a prior note, is not a question of law, but one of fact, to be determined by the jury; and when it is given in renewal only of a prior note, the real consideration for which it is given is that for which the prior note was given, and it is, in a suit upon the subsequent note, competent to show that that consideration has failed.''

In the case at bar the affidavits do not show that the alleged agreement by the plaintiff that the defendants ''would not be asked or expected to pay any one of the notes'' made by the defendants, was without consideration and *nudum pactum.* The consideration to the plaintiff, as averred by the affidavits, was that the plaintiff desired to use the note of the defendants to meet some objection of the bank examiners in regard to the note of the Self Seating Valve Company. Just what benefit the plaintiff would derive from the note of the defendants in this connection does not appear from the affidavits. The question of the value of the consideration, however, is not one for us to determine. The consideration was sufficient if the plaintiff derived only a slight value. 3 R. C. L., sec. 127, p. 932.

Whether the note of the defendants was to be used fraudulently to impose upon the bank examiners does not appear from the affidavits; and we cannot presume that the transaction was fraudulent.

Counsel for the plaintiff assert that the defendants "were officers, directors and stockholders of the Self Seating Valve Company"; and that "the party accommodated was the Self Seating Valve Company."

The answer to the contention of counsel for the plaintiff is that the record does not show that the defendants were officers, directors and stockholders of the Self Seating Valve Company.

We are of opinion that the affidavits set up a meritorious defense, and that the court erred in not vacating the judgment.

*Reversed and remanded.*

McSURELY, P. J., and MATCHETT, J., concur.