George R. McComb, as Receiver for Illinois Trust & Savings Bank of Champaign, Appellant, v. Leland R. Jacobs, Appellee.

Gen. No. 8,353.

Opinion filed February 3, 1930.

GREEN & PALMER, for appellant; HOMER SHEPHERD, GEORGE E. MARTIN and ORIS BARTH, of counsel.

CAMPBELL & GRAHAM, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is a suit upon a promissory note given by appellee to the Illinois Trust & Savings Bank of Champaign on August 15, 1927. The record in this case discloses that the defendant, Jacobs, on or about June 10, 1927, gave to the defunct Illinois Trust & Savings Bank an accommodation note, which note was due 60 days after date. At the time of the giving of this note the testimony shows that there was some conversation had between H. E. McNevins, the cashier of the bank,

and the defendant in which conversation Jacobs, on his direct examination, said that at the time he gave this note H. E. McNevins, the cashier, told him he wanted it for a few days "to bolster up the credit of the bank."

On August 15, 1927, the defendant, Jacobs, was again in the Illinois Trust & Savings Bank, and on this date, McNevins, the cashier, gave back to Jacobs the note Jacobs had given to him about June 10, stating at the time he gave it to him that the note was of no further use to the bank, that it was overdue. Jacobs took this note, tore it to pieces and dropped it in the waste paper basket. At this time the cashier, McNevins, asked if he would not give him another note for $6,000, at the same time telling Jacobs that his bank had some paper in transit; that the bank would need the note for a few days only and that he, McNevins, would either return the note to Jacobs or tear it up, just as Jacobs said. This last note is the note sued upon. It is a demand note and the bank did not close its doors until December, 1927.

The substance of the exact testimony given by appellee as to the transaction is as follows: "McNevin, after he closed the door, gave me a note for $6,000, signed in June of the same year as that one, and told me the use for it had ceased; that it was overdue. I tore it up and put in the waste basket. We talked on various matter not pertaining to this case for some time, and he said, 'Leland, by the way we have got some papers in transit that ought to be here today, tomorrow or the next day, will you give me a like note for $6,000 for a few days and if you will do that I will either call up or tear it up, just as you say?' I replied to him and said, 'What if something happens to you, Harry, where will I be? Will you promise me not to let this note out of the bank, that you won't sell it to a third party?' He said, 'No, assuredly not. We will not sell this note nor otherwise dispose of it

until we return it to you or destroy it.' McNevin was cashier of the bank at the time. I signed the note three hours after this conversation. At the time I signed the note, I received no money from the bank, and have not received any money since that time on account of the signing of the note. The face value of the note McNevin gave back to me was $6,000. At the time I signed the note McNevin returned to me, I had a conversation with McNevin about the signing of that note. Mr. McNevin asked me to give the Illinois Trust & Savings Bank a note to bolster their credit for a few days and I gave it to him."

There was no further testimony except that the receiver was appointed in January, 1928, and that the receiver had paid, in dividends, to the depositors 45 per cent of their claims.

There was a verdict and judgment for appellee (defendant)° and the plaintiff has appealed.

It is contended by appellant that the facts in this case bring the case within the rule laid down in *Golden v. Cervenka,* 278 Ill. 409, page 427, where it is held: "Where notes or other securities have been executed to a bank for the purpose of making an appearance of assets, so as to deceive the examiner and enable the bank to continue business, although the circumstances may have been such that the bank itself could not have collected the securities, it has been held that the receiver, representing the creditors, could maintain the action, and the makers were estopped, upon the insolvency of the bank, to allege want of consideration. (*Hurd v. Kelly,* 78 N. Y. 588; *Best v. Thiel,* 79 id. 15; *Sickles v. Herold,* 149 id. 332, affirming 36 N. Y. Supp. 488; *State Bank of Pittsburg v. Kirk,* 216 Pa. 452; *People's Bank v. Stroud,* 223 id. 33; *Dominion Trust Co. v. Ridall,* 249 id. 122; *Lyons v. Benney,* 230 id. 117.) In one such case (*Lyons v. Benney, supra,*) the defense was set up by an affidavit which the court held insuffi-

cient, saying: 'The substance of this affidavit of defense is that the appellant made and delivered his note to the bank in furtherance of a scheme to deceive the bank examiner, under a promise made to him by the bank that he would not be held liable upon the obligation. He agreed that it should appear as one of the assets of the institution for the purpose of deceiving those whose duty it was to examine them, and he now sets up the defense that as it was to serve no other purpose it was to be regarded as a worthless piece of paper under this agreement with the bank. . . . So this appellant was a party to a scheme of the officers of the bank to enable them to make a deceptive and fraudulent showing of assets, and as the fraud was perpetrated upon the creditors, now represented by the bank's receiver, he can maintain an action on the note for their benefit. . . . Neither the law nor good conscience can sanction the contention of the defendant that he ought to be permitted to take advantage of the fraudulent agreement between him and the bank, to which its creditors were not parties and for whom the receiver sues.' "

The rule in this case was again laid down in *Niblack v. Farley*, 286 Ill. 536, as a basis for the holding in *Golden v. Cervenka, supra*. The court said: "All persons giving credit to the bank were entitled to rely upon the Auditor's certificate, and it is in accordance with the plainest principles of equity that no person who procured that certificate to be made could afterward be permitted to deny its truth, or the truth of his representation on which it was based, as against a subsequent creditor of the bank who was injured by reason of its falsity. It is immaterial whether such subsequent creditor knew of the previous representation or not. If he was injured by reason of the false certificate he has a right to seek redress against those who caused it to be made. It is also immaterial whether the Central Trust Company or Dawes had any

fraudulent intention, knew anything about the condition of the national bank or made any profit out of the transaction. The trust company is estopped, as against creditors who had a right to rely upon the Auditor's certificate, to deny that the cash exhibited was the property of the trust and savings bank, for which the trust company must account as a part of the bank's capital. The receiver, who represents the creditors as well as the stockholders of the bank, may in equity require the restoration of the fund for the benefit of the creditors.''

The language of the opinion in *Golden v. Cervenka, supra,* is to be noted carefully—''as against a subsequent creditor of the bank who was injured by reason of its falsity. . . . If he was injured by reason of the false certificate he has a right to seek redress against those who caused it to be made;'' and again on page 430:

''The Central Trust Company having represented that the $1,250,000 exhibited to the Auditor's agent was the property of the LaSalle Street Trust and Savings Bank, and having immediately taken and retained possession of it to the exclusion of the bank, in an action for an accounting for the benefit of the creditors of the trust and savings bank it must make good its representation and must account for the money so wrongfully taken by it. It was only obliged, however, to account to the creditors. There was no liability to the stockholders. The bank having by an evasion obtained the certificate authorizing it to commence business, did so by purchasing the assets of the national bank in consideration of the assumption of all its liabilities. It was thus provided with a capital stock, and if the value thereof was equal to the $1,250,-000, which was the amount of its capital stock and surplus represented to be paid in, its creditors cannot complain. If it fell short of that amount its creditors have the right to that extent to complain of the persons

who were responsible for the making of the false certificate and to require them to make good the deficiency.''

*Golden v. Cervenka, supra,* involved the affairs of the LaSalle Street National Bank which was changed over to a State bank under the title of the LaSalle Street Trust and Savings Bank. In the suit in question all of the affairs, assets, resources and liabilities of the bank were gone into as of the time of the transfer, and later, and it was shown how and in what manner the creditors were injured. In the case at bar nothing is shown as to the existence, duration or condition of the bank at any time, or how or in what manner any creditor or stockholder was or might have been injured. It is not plain to be seen how any stockholder of the bank could have been injured. There is nothing in this record to show but that the receiver holds ample assets to pay all of the creditors. If such be the case, no one could be injured by the giving of the note in question. In other words, the proofs must show that the giving of the note or the acceptance of it by the bank was to accomplish in some manner a fraud. The purpose of the giving of the note in question was ''to take the place of some papers in transit,'' possibly for the protection of McNevins. It may have been for the protection of some other officer of the bank or for the bank's protection. It is not shown. The falsity of any statement made is not shown. For anything that appears the bank did have papers and securities in transit which took the place of and relieved the necessity of the use of appellee's note. Counsel, upon the trial, did not even inquire. No proof was offered tending to show that the note was given for any fraudulent purpose. In *First Nat. Bank of Harvey v. Trott,* 236 Ill. App. 412, 420, it was held: ''Whether the note of the defendants was to be used fraudulently to impose upon the bank examiners does

not appear from the affidavits; and we cannot presume that the transaction was fraudulent.''

There was no consideration for the note and it not appearing that the note was given for any illegal or fraudulent purpose, the judgment of the circuit court of Champaign county is affirmed.

*Affirmed.*