# JOHN N. GAGE

## v.

# CHARLES A. LEWIS.

1. FRAUD—*defense of, at common law, in action on specialty.* At common law, fraud could not be pleaded or given in evidence in an action on a specialty, unless it vitiated the execution of the instrument, and the defendant in such action was not allowed to show that he was induced to execute it by fraudulent representations as to the nature or value of the consideration.

2. SAME—*may be shown under the statute, as a failure of consideration.* Under the statute relating to negotiable instruments, in an action on a sealed instrument, it is competent to show that the defendant was induced to execute the same by false and fraudulent representations, as that is one mode of showing a failure of consideration.

3. FAILURE OF CONSIDERATION—*parol evidence to vary written agreement.* For the purpose of showing a failure of consideration, it may be shown by parol evidence that the consideration expressed in the instrument sued on is not the real consideration which induced its execution, but that it was entirely different. The cases in this court holding that parol evidence is not admissible to vary a written contract, has no application where a want of consideration, or a partial or total failure of consideration, is pleaded in an action on the same.

4. SAME—*sufficiency of plea.* Where the only existing fact alleged to have been represented by the plaintiff to induce the defendant to sign a bond as security for another to pay the debts of a firm which he had bought out, was, that the assets of the firm were ample to pay the debts, the plea should deny the truth of such representation positively, and not argumentatively, and show that it was known to be untrue when made, in order to make it good as a plea of a want or failure of consideration.

5. SAME—*representations as to future intentions.* In an action upon a bond, one of the securities pleaded that the plaintiff promised and agreed with him that, if he would sign the bond, he, the plaintiff, would retire from and forever quit carrying on a certain business in a certain place, and would in no manner compete with the new firm, of which the defendant was to become a member in such business, and that defendant, wholly relying upon such representations and promises, and for no other consideration whatever, executed the bond as security, and that such representations and promises proved to be untrue, and were made solely for the purpose, fraudulently and deceitfully and without any consideration, to obtain the defendant's signature to the bond, and showing a violation of

the promise by entering into the business by the plaintiff immediately afterwards: *Held*, on general demurrer, that the plea was not good, for the reason that the representations and promises which formed the consideration for the security's undertaking could not be said to be false when made, and if not intended to be complied with when made, it was but an unexecuted intention, which has never been held of itself to constitute a fraud.

6. FRAUD—*representation not of matter of fact.* As distinguished from the false representation of a fact, the false representation as to a matter of intention, not amounting to a matter of fact, though it may have influenced a transaction, is not a fraud at law.

7. SAME—*action for false and deceitful representation.* To warrant an action for a false and deceitful representation, it must assert a fact or facts as existing in the present tense, or as having taken place. A promise to perform an act, though accompanied at the time with an intention not to perform, is not such a representation as can be made the ground of an action at law. The party should sue upon the promise, and if this be void, he has no remedy.

8. FAILURE OF CONSIDERATION—*neglect to perform contract in the future, not.* Where the consideration of an undertaking is the promise of the obligee to perform some other act in the future, the neglect of the latter to perform will not defeat the consideration or show its failure, as the obligor may still enforce the contract of the obligee.

9. INDEMNITY—*construction of, as to the payment of debts.* Where one member of a firm purchases the assets of the firm, and gives a bond of indemnity to his co-partner conditioned that he shall pay all debts of the firm due or to become due to any and all persons whomsoever, the reasonable construction will be, that the debts shall be paid when they become due, and as to those then overdue, that he shall pay them immediately.

10. Where a bond is given, intended as a bond of indemnity, but containing a covenant that the obligor will pay certain debts for which the obligee is liable, and the obligor fails to perform, an action lies for the breach, and the obligee is entitled to recover the sums agreed to be paid, although it is not shown that he has been damnified, unless from the whole instrument it manifestly appears that its sole object was a covenant of indemnity.

11. GUARANTY—*where notice to guarantor or surety is unnecessary.* It is a general rule that, where one guaranties the act of another, his liability is commensurate with that of his principal, and he is no more entitled to notice of the default than the latter. Both must take notice of the default at their peril.

12. PAYMENT—*when the giving of a note is.* Where a promissory note is received by the creditor as a full satisfaction of the original debt, this

will be a sufficient payment to enable the party so paying to maintain an action upon a bond to indemnify him against the payment of such indebtedness.

13. Pleading—*copy of instrument sued on no part of.* The copy of a bond sued on filed with a declaration is no part of the declaration, and can not be considered on an objection that all the obligors were not made parties defendant.

Appeal from the Superior Court of Cook county; the Hon. William A. Porter, Judge, presiding.

This was an action of debt, brought by the appellee against the appellant and Douglas R. Hale and Richard L. Carhart, to the February term, 1873, of the Superior Court of Cook county, upon the following penal bond:

"Know all men by these presents, that we, Richard L. Carhart, James L. H. Smith, Douglas R. Hale and J. N. Gage, of Chicago, Illinois, are held and firmly bound unto Charles A. Lewis in the penal sum of $40,000, lawful money of the United States, for the payment of which well and truly to be made, we bind ourselves and legal representatives firmly by these presents. Witness our hands and seals this 19th day of February, A. D. 1872.

"The condition of the above obligation is such, that whereas said Carhart & Lewis have this day dissolved the co-partnership heretofore existing between them, under the firm name of Carhart, Lewis & Co.; and whereas said Carhart has taken all of the assets of said firm, except the personal accounts of each member appearing on the books of Carhart, Lewis & Co., which have been settled and adjusted, and in part consideration thereof said Carhart has agreed to pay all the debts due by said firm, or by the said firm of Carhart, Lewis & Tappan, to any of their creditors, and to the estate of Geo. W. Tappan, deceased, and excluding, however, the personal account of either of said members of said firm appearing upon the books of Carhart, Lewis & Co., and to save and keep harmless said Lewis from any and all of the same:

"Now, therefore, if said Carhart shall pay all of said debts, claims and demands, due or to become due by said firm of Carhart, Lewis & Co., and Carhart, Lewis & Tappan, to any and all persons whatsoever, and to said estate of Geo. W. Tappan, deceased, (excluding, however, the personal accounts of the members of said firm so appearing upon the books of said Carhart, Lewis & Co.,) and save, indemnify and keep harmless the said Charles A. Lewis therefrom, then this obligation to be void, otherwise to remain in full force and effect.

| [Signed] | RICHARD L. CARHART, | [Seal] |
| | JAMES L. H. SMITH, | [Seal] |
| | DOUGLAS R. HALE, | [Seal] |
| | J. N. GAGE. | [Seal]" |

Numerous special breaches of the bond were assigned, but as no question was raised upon them in argument, and none is noticed in the opinion of the court, it is unnecessary to set them out.

The defendant Gage filed two special pleas, as follows:

"And the said defendant. John N. Gage, comes and defends the wrong and injury, when, etc., and files his several plea, and says, that he ought not to be charged with the said debt by virtue of the said supposed writing obligatory, because he says that the said writing obligatory in the said declaration mentioned was obtained from this defendant by the plaintiff by fraud, covin and misrepresentation, to-wit: at the date of said bond, and in the county aforesaid, and which fraud, covin and misrepresentation this defendant avers was in the matters following, that is to say: Immediately prior to the date of the bond referred to in the said declaration, this defendant, with others as co-partners, was carrying on, in the city of Chicago and county aforesaid, a wholesale millinery business, under the name and style of Gage Bros. & Co., while the said plaintiff, at the same time, with Richard L. Carhart, the principal in said bond, was carrying on in the said city a large and profitable wholesale business in hats, caps, furs and buck

goods, under the name and style of Carhart, Lewis & Co., and as successors to the firm of Carhart, Lewis & Tappan, and then and there negotiations were entered into by and between the said two existing firms, which resulted in an agreement on the part of such two firms, and of said plaintiff, by which he, the said plaintiff, was to quit and forthwith retire from the wholesale hat, cap, fur and buck goods business in said Chicago, and said Carhart was to have all the assets of said firm of Carhart, Lewis & Co., and pay all its debts, as mentioned in the said bond, and a new firm was to be formed to carry on the old business of said Carhart, Lewis & Co., which new firm was then and there formed by said Carhart, one Wm. P. Mallory, and the said firm of Gage Bros. & Co., as co-partners, and the name and style adopted for such firm was, Gage, Carhart & Mallory.

"And this defendant further avers, that, while the said negotiations were pending, the said Lewis came to this defendant and requested him to sign the said bond as surety for the said Carhart, which this defendant then and there at first absolutely refused to do; whereupon the said Lewis then, and in order to induce this defendant to withdraw his refusal aforesaid, and to sign said bond, craftily and deceitfully represented to this defendant, in substance, that he, the said Lewis, had made arrangements to go into the lumber business, in Chicago, aforesaid, and that the assets of Carhart, Lewis & Co. were ample to pay all its debts, and that the liability as surety upon the said bond would therefore be only nominal, and that he, the said Lewis, would, immediately upon the defendant signing said bond, finally and absolutely quit and retire from the wholesale hat, cap, fur and buck goods business, in said Chicago, and that the said new firm of Gage, Carhart & Mallory would and should succeed to all the valuable business and good will of the said late firm of Carhart, Lewis & Tappan, and Carhart, Lewis & Co.; and the said Lewis then and there positively promised and agreed to and with this defendant, that, if this defendant would sign

said bond, he, the said Lewis, would, forthwith, absolutely retire from and quit forever carrying on the wholesale hat, cap, fur and buck goods business in said Chicago, and would in no manner compete with the said new firm in such business; whereupon, relying solely upon such representations and promises, and for no other consideration whatever, this defendant did withdraw his said refusal and sign said bond; but this defendant avers that each and all of the said representations and promises proved to be false and untrue, and were made solely for the purpose, fraudulently and deceitfully, and without any consideration, to obtain this defendant's signature to the said bond; for this defendant avers, that, immediately after obtaining such signature, the said Lewis, in direct violation of his aforesaid representations and agreements, proceeded to organize and carry on, in said Chicago, a wholesale hat, cap, fur and buck goods business, under the firm and style of Charles A. Lewis & Co., and in opposition to and as a rival of the said firm of Gage, Carhart & Mallory; and to make such rivalry more successful, the said Lewis hired away from said Gage, Carhart & Mallory such employees of the late firm of Carhart, Lewis & Co. as were best acquainted with the business and customers of such late firm, and endeavored, in every way in his power, to retain for himself the business and customers of such late firm; which false, crafty and deceitful conduct on the part of him, the said Lewis, caused a great injury and loss to the said firm of Gage, Carhart, Mallory & Co., and this defendant, to-wit: the sum of $50,000, to-wit: at the place aforesaid.

"Wherefore, he, the said defendant, says that the said writing obligatory in the said declaration mentioned, was and is void in law, as to this defendant, by reason of the aforesaid fraud, covin and misrepresentation, and this he is ready to verify. Wherefore he prays judgment, if he ought to be charged with said debt, by virtue of the said writing obligatory, etc.

    39—68TH ILL.

"And for a further plea in this behalf, the said defendant, John N. Gage, comes and defends the wrong and injury, when, etc., and severally says, that he ought not to be charged with the said debt, by virtue of the said supposed writing obligatory, because he says that the said writing obligatory, in the said declaration mentioned, was obtained from this defendant by the plaintiff by fraud, covin and misrepresentation, to-wit: at the date of said bond, and in the county aforesaid, and which fraud, covin and misrepresentation, this defendant avers, was in the matter following, that is to say, immediately prior to the bond referred to in the said declaration, this defendant, with others as co-partners, was carrying on in the said city of Chicago, and county aforesaid, a wholesale milli- nery business, under the name and style of Gage Bros. & Co., while the said plaintiff, at the same time, with Richard L. Carhart, the principal in said bond, was carrying on in the said city a large and profitable wholesale business in hats, caps, furs and buck goods, under the name and style of Car- hart, Lewis & Tappan, and then and there negotiations were entered into by and between the said two existing firms, which resulted in an agreement on the part of such two firms and said plaintiff, by which he, the said plaintiff, was to quit and forthwith retire from the wholesale hat, cap, fur and buck goods business in said Chicago, and the said Carhart was to have all the assets of said firm of Carhart, Lewis & Co., and pay all its debts, as mentioned in the said bond, and the new firm was to be formed to carry on the old business of said Car- hart, Lewis & Co., which new firm was then and there formed by said Carhart, one Wm. P. Mallory, and the said firm of Gage Bros. & Co., as co-partners, and the name and style adopted for such new firm was Gage, Carhart & Mallory, and this defendant further avers that, while the said negotiations were pending, the said Lewis came to this defendant and requested him to sign the said bond as surety for the said Carhart, which this defendant then and there at first abso- lutely refused to do; whereupon the said Lewis then and

there, in order to induce this defendant to withdraw his refu-
sal aforesaid, and to sign said bond, craftily and deceitfully
represented to this defendant, in substance, that he had made
arrangements to go into the lumber business in Chicago
aforesaid, and that the assets of Carhart, Lewis & Co. were
ample to pay all its debts, and that this defendant's liabilities
as surety upon the said bond would therefore be only nominal,
and that he, the said Lewis, would, immediately upon this
defendant signing said bond, finally and absolutely quit and
retire from the wholesale hat, cap, fur and buck goods busi-
ness in said Chicago, and that the said new firm of Gage,
Carhart & Mallory would and should succeed to all the valu-
able business and good will of the said late firms of Carhart,
Lewis & Tappan, and Carhart, Lewis & Co.; and the said
Lewis then and there positively promised and agreed to and
with the defendant, that, if this defendant would sign such
bond, he, the said Lewis, would forthwith absolutely retire
from and quit forever carrying on the wholesale hat, cap, fur
and buck goods business in said Chicago, and would in no
manner compete with the said new firm in such business;
whereupon, relying wholly upon such representations and
promises, for no other consideration whatever, this defendant
did withdraw his said refusal and sign said bond; but this
defendant avers that each and all the said representations and
promises proved to be false and untrue, and were made solely
for the purpose, fraudulently and deceitfully, and without any
consideration, to obtain the defendant's signature to the said
bond; for this defendant avers that, immediately after ob-
taining such signature, the said Lewis, in direct violation of
his aforesaid representations and agreements, proceeded to
organize and carry on in said Chicago, a wholesale hat, cap,
fur and buck goods business, under the firm name and style
of Charles A. Lewis & Co., and in opposition to and as a
rival of the said firm of Gage, Carhart & Mallory; and to
make such rivalry more successful, the said Lewis hired away
from said Gage, Carhart & Mallory such employees of the

late firm of Carhart, Lewis & Co. as were best acquainted
with the business and customers of such late firm, and endeav-
ored in every way in his power to retain for himself the busi-
ness and customers of such late firm; which false, crafty and
deceitful conduct on the part of him, the said Lewis, caused
a great injury and loss to the said firm of Gage, Carhart &
Mallory, and to this defendant, to-wit: the sum of $50,000,
to-wit: at the place aforesaid.

"And the said defendant avers that, but for the aforesaid
representations and promises on the part of said plaintiff, so
fraudulently and deceitfully made, he, this defendant, would
not have signed said bond; but by the aforesaid acts of the
plaintiff, he, this defendant, has been deprived of the sole and
only consideration upon which he signed the same.

"Whereby, and by reason of the aforesaid acts of the plain-
tiff, the consideration for which this defendant signed the said
writing obligatory and became bound thereby, entirely failed,
and this, he, this defendant, is ready to verify.

"Wherefore he prays judgment, etc."

The plaintiff demurred to each plea generally. The court
sustained the demurrer, and the defendant refusing to answer
further, the plaintiff's damages were assessed by the jury at
$4790, for which the court gave judgment. Defendant Gage
excepted, and brings the case here by appeal.

The other facts material to an understanding of the case
sufficiently appear in the opinion of the court.

The errors assigned are:

1st. That the court below erred in sustaining the demurrer
to the pleas.

2d. The assessment of damages upon the first assignment
of breaches of the bond referred to in the amended declaration
was irregular, and the amount of such damages was excessive.

3d. The assessment of damages upon the several assign-
ments of breaches of said bond was irregular, and there was
no sufficient evidence to warrant the finding of the jury as to

the amount of such damages, and the court erred in rendering judgment against the appellant for such amount.

4th. James L. H. Smith, one of the obligors in such bond, should have been made a party to said action; and the court erred in sustaining the action against only a part of the obligors on said bond.

5th. The court erred in rendering judgment against said Gage in said action for any amount whatever.

Upon the argument of the case, so much of the assignment of errors as questions the sufficiency of the breaches of the bond assigned in the declaration, were abandoned, and no question was raised on the sufficiency of the evidence to sustain the verdict, any further than is noticed in the opinion of the court.

Messrs. SLEEPER & WHITON, for the appellant.

Messrs. ROSENTHAL & PENCE, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The rule at common law was, that fraud could not be pleaded or given in evidence as a defense to an action on a specialty, unless it vitiated the execution of the instrument, and that the defendant in such action was not allowed to show that he was induced to execute it by fraudulent representations as to the nature or value of the consideration. This rule, however, is materially modified by our statute relating to Negotiable Instruments, by which it is provided that in actions upon bonds for the payment of money or the performance of covenants, as well as upon bills and notes, it may be set up as a defense that the instrument was executed without any good or valuable consideration, or that the consideration has failed in whole or in part.

Under this statute it is competent to show that the defendant was induced to execute the instrument by false and fraudulent representations, as that is one mode of showing a failure of consideration. *White* v. *Watkins*, 23 Ill. 482 ; *Greathouse* v. *Dunlap*, 3 McLean, 304 ; *Case* v. *Bangton*, 11 Wend. 108 ;

*Leonard* v. *Bates,* 1 Blackford, 172 ; *Fitzgeral* v. *Smith,* 1 Ind.
310 ; *Chambers* v. *Gaines,* 2 Greene, 320. And, for this pur-
pose, it may be shown that the consideration expressed in the
instrument is not the real consideration which induced its
execution, but that it was, in fact, entirely different. *G. W.
Ins. Co.* v. *Rees,* 29 Ill. 272. In that case, speaking of the
statute referred to, and admitting parol evidence to explain
the consideration, it was said : "It is impossible that this
statute can be made effective in any other way than by re-
ceiving such proofs ; and in receiving them, the old rule, that
written contracts can not be varied by parol, becomes, in all
such cases, ineffective.

"The ruling of this court, therefore, in *Lane* v. *Sharp,* 3
Scam. 566, and in all subsequent cases founded upon that, is
to be considered as having no application to a case where no
consideration, or a partial or total failure of consideration, is
properly pleaded in an action brought upon an instrument of
writing for the payment of money or property, or the per-
formance of covenants, or conditions to an obligee or payee."

No necessity is now perceived to overrule that case, or
modify the rule there announced.

In the present case, however, the pleas do not, in our opin-
ion, sufficiently show either a want or failure of consideration
to constitute a defense to the plaintiff's cause of action.

The facts alleged in each plea are, substantially, the same,
the only difference being in stating the legal inference to be
drawn from the facts.

The only existing fact alleged to have been represented by
the plaintiff to induce the defendant Gage to sign the bond,
is, that the assets of Carhart, Lewis & Co. were ample to pay
all the debts of the firm ; but it is nowhere alleged, in direct
terms, that this representation was known to be untrue at the
time it was made, or that it was, in fact, untrue. There is a
general allegation that all the representations *proved* to be
false, but this is argumentative, and entirely too indefinite.
Besides, it seems, from the succeeding explanation showing

why the representations proved to be false, that it was only intended that this allegation should apply to the other representations, which will be hereafter noticed. The pleas were, in this respect, clearly defective. *Sims* v. *Kline,* Breese (Beecher's ed.) 302; *Slack* v. *McLagan,* 15 Ill. 248; *White* v. *Watkins, supra.*

The other representations, upon the faith of which it is alleged the defendant Gage signed the bond, do not constitute such a fraud as, in the law, renders the consideration void. They are, in substance, that the plaintiff promised and agreed, to and with the defendant, that if the defendant would sign the bond the plaintiff would retire from and forever quit carrying on the wholesale hat, cap, fur and buck goods business in Chicago, and would, in no manner, compete with the new firm, of which the defendant was to become a member, in such business; and that the defendant, wholly relying upon such representations and promises, and for no other consideration whatever, did, etc. It can not be said that these representations and promises were false when made, for, until the proper time arrived, and plaintiff refused to comply with them, it could not positively be known that they would not be performed. Even if, at the time they were made, it was not intended to comply with them, it was but an unexecuted intention, which has never been held, of itself, to constitute fraud. If they legally amount to anything, they constitute a contract.

"As distinguished from the false representation of a fact, the false representation as to a matter of intention, not amounting to a matter of fact, though it may have influenced a transaction, is not a fraud at law." Kerr on Fraud and Mistake, 88. So it is said in Bigelow on Estoppel, 481: "The representation or concealment must, also, in all ordinary cases, have reference to a present or past state of things; for if a party make a representation concerning something in the future, it must generally be a statement of intention or opinion, uncertain to the knowledge of both parties, or it will

come to a contract, with the peculiar consequences of a contract."

In *Gallagher* v. *Brunel*, 6 Cowen, 346, this question is fully and carefully discussed, and it is there held, that to warrant an action for a deceitful representation, it must assert a fact or facts as existing in the present tense. A promise to perform an act, though accompanied, at the time, with an intention not to perform, is not such a representation as can be made the ground of an action at law. The party should sue upon the promise, and if this be void he has no remedy.

Treating the representations alleged in the plea as amounting to a contract between the plaintiff and the defendant, we fail to perceive a want or failure of consideration. The allegation is, that, relying upon these representations and promises, and for no other consideration, the defendant did, etc. These representations and promises, then, were the consideration, and the misfortune with the defendant is, not that he did not have them, or that anything has since transpired whereby he is not permitted to resort to them, but merely that he has not received the benefit from them which he was authorized to expect. In other words, he signed the bond upon the faith of a contract with the plaintiff, which the plaintiff has since failed to keep. The case would, in principle, have been nowise different had plaintiff agreed to have paid him a sum of money by a given day, in consideration of his signing the bond, and when the day arrived failed to make payment. It could scarcely be claimed in such a case, while the defendant would have had his remedy upon his contract, that there was no consideration, or that it had failed.

This case is plainly distinguishable from the class of cases where, in the sale and delivery of personal property, or the purchase of real estate, the title fails, it is held, that such failure may be interposed as a defense to a suit brought for the recovery of the purchase money. In those cases the consideration is the title to the property, while here it is the representation and promise of the party to do an act in the

future.   The principle is clearly and concisely stated in 1 Parsons on Notes and Bills, 203, thus :  "We must, however, discriminate between a failure of consideration and a failure of benefit resulting from it.   A promises B to do a certain thing, and B makes his note to A in consideration of this promise.   Then A fails entirely to perform his promise, but sues B on his note.   If B retains A's promise, or if the contract is such that A is always and permanently held on his promise, B can not defend against the note on the ground of a failure of consideration ; but if B cancels A's promise, and A accepts this, the contract is so far canceled and annulled, and then the consideration for the note fails."   See, also, *Willets* v. *Burgess*, 34 Ill. 498.

The demurrer to the pleas was properly sustained.

The objection taken to the sufficiency of the declaration is not well founded.   The condition of the bond is, "that if the said Carhart shall pay all of said debts, claims and demands due or to become due, by the said firms of Carhart, Lewis & Co., and Carhart, Lewis & Tappan, to any and to all persons whatsoever,     *     *     *     *     and save, indemnify and keep harmless the said Charles A. Lewis therefrom," etc. The reasonable construction of this language is, that the debts should be paid when they became due ; and as to those that were then overdue, the law required payment to be made immediately.   *Churchill* v. *Hunt*, 3 Hill, 321.   It was not necessary that plaintiff should have been compelled to pay these debts by a course of legal proceedings.   It was sufficient that the debts were due, that he was liable to pay, and that he did pay.   *Webb* v. *Pond*, 19 Wendell, 423.   It has ever been held, that where a bond is given, intended as a bond of indemnity, but containing a covenant that the obligor will pay certain debts, for the payment of which the obligee is liable, and the obligor fails to perform, an action lies for the breach, and the obligee is entitled to recover the sums agreed to be paid, although it is not shown that he has been damnified, unless, from the whole instrument, it manifestly appears

that its sole object was a covenant of indemnity. In the matter of *Negus,* 7 Wendell, 499 ; *Webb* v. *Pond, supra ; Thomas* v. *Allen,* 1 Hill, 145 ; *Gilbert* v. *Wiman,* 1 Comstock, 550; *Churchill* v. *Hunt,* 3 Denio, 321. No notice of the default of Carhart in paying the debts was necessary. It is a general rule, that where one guaranties the act of another, his liability is commensurate with that of his principal, and he is no more entitled to notice of the default than the latter. Both must take notice of the whole, at their peril. *Somersall* v. *Barnaby,* Cro. Jac. 287 ; *Atkinson and Wolfe's case,* 1 Leon. 105 ; *Douglass* v. *Howland,* 24 Wendell, 35 ; *Hammond* v. *Gilmore's Admr.* 14 Conn. 479 ; *Duffield* v. *Scott et al.* 3 Term R. 374.

The objection urged to a portion of the payments, made by the plaintiff by giving his individual notes in lieu of the original indebtedness, can not be sustained. It has been long since settled, by the decisions of this court, that such a mode of payment is sufficient where the individual note is received, as the evidence in this case shows the plaintiff's notes were, as a full satisfaction of the original indebtedness. *Ralston et al.* v. *Wood,* 15 Ill. 171 ; *Smalley* v. *Edey,* 19 id. 207 ; *Hitt* v. *Sharer,* 34 id. 9.

We perceive no force in the remaining objection urged as a ground for reversal, that James L. H. Smith, one of the original obligors upon the bond, was not made a party. Smith is not declared against as one of the makers of the bond, and the declaration is strictly in conformity with the directions given in *Cummings et al.* v. *The People,* 50 Ill. 132. The declaration in the present case differs from the declaration in that case in this: there, it was alleged that Argo was one of the makers of the bond, and it was not alleged that he was dead ; here, it is not alleged that Smith was one of the makers of the bond. The copy of the bond filed with the declaration is no part of the declaration, and can not be considered in connection with this objection.

The judgment is affirmed.                    *Judgment affirmed.*