**PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY, a Corporation, Plaintiff,**

v.

**JOHN H. MILLER MANUFACTURING CORP., a Corporation, Defendant.**

**No. Q-180.**

United States District Court
S. D. Illinois, S. D.
March 2, 1959.

John C. Trussell, Chicago, Ill., Charles Binkert, Quincy, Ill., for plaintiff.

Paul B. Nichols, Quincy, Ill., for defendant.

POOS, District Judge

The plaintiff, Puerto Rico Industrial Development Company, a Corporation, filed suit against the defendant, John H. Miller to recover from him the sum of $38,115.39.

The Complaint charged that on July 23, 1952, John H. Miller Manufacturing Corporation of Puerto Rico, a Puerto Rico Corporation, executed and delivered to plaintiff a promissory note in the principal amount of $49,250, which was secured by a chattel mortgage of even date, and that thereafter, by an agreement dated May 29, 1953, John H. Miller, the defendant herein, executed and delivered his personal guaranty agreement guaranteeing plaintiff against losses or damages which might be sustained by reason of the failure of the John H. Miller Manufacturing Corporation of Puerto Rico to pay or satisfy the note secured by said mortgage and that thereafter that John H. Miller Manufacturing Corporation of Puerto Rico defaulted in the payment due under the chattel mortgage note on May 31, 1954, and that thereafter on June 28, 1954 the said John H. Miller Manufacturing Company of Puerto Rico, having failed to pay the indebtedness due, the said chattel mortgage and the note secured thereby was foreclosed in

the Superior Court, San Juan Section of the General Court of Justice of Puerto Rico, and that pursuant to the laws of Puerto Rico a public sale of all chattels was held by the Marshal of said Superior Court on September 21, 1954, and that it was determined in said chattel mortgage foreclosure proceedings that the total amount due plaintiff from John H. Miller Manufacturing Company of Puerto Rico, including principal, interest and cost, was $45,615.39; that the proceeds realized from the sale of the chattel property under the chattel mortgage totalled $7,500, which was applied to the total indebtedness then due, leaving a deficiency due plaintiff of $38,115.39.

The chattel mortgage was attached to the Complaint as Exhibit "A", the chattel mortgage note was attached to the Complaint as Exhibit "B", and the guaranty agreement was attached to the Complaint as Exhibit "C".

The defendant filed answer to the suit the effect of which was to admit the execution of the note and chattel mortgage by the John H. Miller Manufacturing Company of Puerto Rico, a Corporation, and admitted also the execution of the guaranty agreement, but set up as a defense a factual situation substantially as follows: That the guaranty agreement dated May 29, 1953 was executed by the plaintiff, but denied that the guaranty agreement was executed at the same time that the chattel mortgage and the chattel mortgage note was executed, and denied that it was any part of the original transaction; also admitting that the chattel mortgage note and the chattel mortgage guaranteeing the said note were executed by the John H. Miller Manufacturing Company of Puerto Rico, a Corporation, and denied that there was any consideration for the aforementioned guaranty agreement; that the said note upon which the money was loaned and as secured by the aforementioned chattel mortgage was not for the use and benefit of John H. Miller, but was for the sole use and benefit of John H. Miller Manufacturing Company, a Corporation.

The evidence is this case shows that the Puerto Rico Industrial Development Company is a Corporation, organized, created and existing under and by virtue of the laws of Puerto Rico; that said Corporation and the capital stock thereof is wholly owned by the Government of Puerto Rico; that John H. Miller Manufacturing Company of Quincy, Illinois, an Illinois Corporation, prior to the organization of the Puerto Rico John H. Miller Manufacturing Corporation, was engaged in the business of manufacturing statues, etc., for sale. That said business was a going concern, and is at this time a going concern in the City of Quincy, Illinois; that John H. Miller was the President of the John H. Miller Manufacturing Company of Quincy, Illinois, and prior to the execution of the note and mortgage aforesaid, arranged with the Puerto Rico Industrial Development Company to organize a Corporation under the laws of Puerto Rico for the purpose of doing a somewhat similar business in Puerto Rico; that John H. Miller had learned of tax saving benefits that could be obtained by a Corporation engaged in a similar type of business in Puerto Rico. He thereupon arranged with the Puerto Rico Industrial Development Company to organize the John H. Miller Manufacturing Corporation of Puerto Rico, which latter Corporation was created on the 23rd day of July, 1952, under the laws of Puerto Rico, and thereafter on the same date executed on behalf of the Puerto Rico Manufacturing Corporation, a chattel mortgage and note in the amount of $49,250 with interest at the rate of 4½ per cent per annum, which note was payable in installments of $1,123.07 monthly, commencing on the first day of September, 1952.

Thereupon the Corporation entered into business in Puerto Rico in a leased building provided by Puerto Rico Industrial Development Company, a Corporation.

For some reason not disclosed by the evidence, the Puerto Rico Miller Corporation failed, the chattel mortgage was

foreclosed, and a deficiency resulted in the amount of $38,115.39.

The purpose of this suit is to recover from John H. Miller individually on his guaranty agreement this deficiency.

The guaranty agreement in so far as it affects this case is in the words and figures following, to-wit:

"Guaranty

"Know All Men by These Presents That

"Whereas, among other obligations, J. H. Miller Manufacturing Corp. of P. R. is indebted to Puerto Rico Industrial Development in the sum of $49,250 secured by a chattel mortgage note dated July 23, 1952, bearing interest at the rate of 4½% per annum,

"Now therefore, in consideration of the sum of One Dollar ($1.00) in hand paid by Puerto Rico Industrial Development Company to the undersigned and of other good and valuable considerations, the receipt whereof is hereby acknowledged, the undersigned hereby agrees to make good any losses which may be sustained by Puerto Rico Industrial Development Company should said chattel mortgage note of J. H. Miller Manufacturing Corp. of P. R. in the principal amount of $49,250.00 and the interest thereon not be paid when due and the chattels securing same should not bring a sufficient amount to fully satisfy the note, provided, however, that the Guarantor shall be afforded every reasonable opportunity to secure a purchaser prior to the chattels being offered for sale at public auction, and provided further that in case of the death of the undersigned, all of the obligations of the undersigned hereunder shall cease and terminate and be of no further force or effect.

"In Witness Whereof, the undersigned has executed this guaranty this 29th day of May, 1953.

"(signed)    John H. Miller

"Affidavit No. 3654

"Subscribed and acknowledged before me by Mr. John H. Miller of legal age, married and a resident of Guaynabo, Puerto Rico, and personally known to me, this 29th day of May, 1953.

"(signed)   G. A. Apsey
"Notary Public

"Accepted:

"Puerto Rico Industrial Development Company

"By (signed) Rafael Fabregas, Jr."

The evidence further discloses that on the 5th day of May, 1953, that the John H. Miller Manufacturing Corp. of Puerto Rico, in order to conserve its cash, was in need of money to meet payrolls, and that after discussion, on said date the plaintiff herein loaned the John H. Miller Manufacturing Corp. of Puerto Rico the further sum of $16,304.60, due and payable ninety days after date. This note was executed by John H. Miller Manufacturing Corporation of Puerto Rico by John H. Miller, President, and was secured by the personal signatures of John H. Miller and Shirley A. Miller.

This note was paid in the due course of business and is not in dispute.

It is the position of the plaintiff that this note and the loan of this money to the Puerto Rico Miller Corporation was the consideration for the execution of the guaranty agreement. This is denied by the defendant.

Plaintiff's Exhibit 5 is a copy of a letter written to John H. Miller concerning the loan of $16,304.60, on May 6, 1953, and is in the words and figures following, to-wit:

"Puerto Rico Industrial Development Company

"(Cia De Fomento Industrial De Puerto Rico

"San Juan, Puerto Rico

"Commonwealth of Puerto Rico
"May 6, 1953

"Mr. J. H. Miller

"J. H. Miller Manufacturing Co., Inc.

"Manati, Puerto Rico

"Dear Mr. Miller:

"Confirming our recent meeting we are pleased to inform you that the management of this Company has approved your application for a working capital loan in the amount of $16,304.60, subject to the following terms and conditions:

"1 – Amount     $16,304.60

"2 – Term     90 days from date when loan is disbursed

"3 – Interest     6%

"4 – The proceeds of this loan will be used as follows:

    "1 – Payment to this Company of 4 months rent from J. H. Miller Manufacturing Corporation of Puerto Rico as soon as loan is disbursed.

    "2 – To cover 3 weeks payroll ending May 1, May 8 and May 15, 1953, but such amount will never exceed the sum of $10,000.

"5 – The loan will be personally guaranteed by you and your wife, Shirley A. Miller.

"6 – The Corporation will continue paying rent on a monthly basis. The Company has decided to cancel the rent corresponding to the months of June and July, 1952.

"We are including herewith, for your consideration, two copies of the document regarding your personal guarantee on the machinery loan.

"We shall appreciate it very much if you would submit, at your earliest convenience, a copy of the last certified financial statements of your mainland concern. In addition, please authorize your independent accountant, Mr. Jaime A. Montoya, to send us periodical financial statements of your local Corporation.

"We hope that you might be able to increase the present employment of about 100 to a substantial figure in the next few months.

"Sincerely yours,

"(signed) Rafael Fabregas, Jr.
Finance Vice President

"cc: Mr. Quinones Boneta

"Mr. Ortiz Arzeno

It is the position of the defendant that this letter conclusively shows that the note executed on May 5, 1953, in the amount of $16,304.60 was not the consideration for the execution of the guaranty agreement. Parol evidence was heard by the Court at the trial of this cause from witnesses, the purpose of which was to determine whether or not there was consideration for the guaranty agreement.

John H. Miller testified for the defendant, and Rafael Fabregas, Jr. who was Finance Vice President of Puerto Rico Industrial Development Company, testified for the plaintiff.

The evidence concerning the consideration for the guaranty agreement outside of the letter defining in exact terms the consideration for the loan of $16,304.60, was heard subject to the objections of defendant that plaintiff was trying to vary by parol the exact terms for the consideration of the note as defined in the letter of May 6, 1959, wherein Rafael Fabregas outlined the terms and consideration for this loan in specific language, which did not include any provision that this loan was granted in further consideration of the execution by John H. Miller of the guarantee of the chattel mortgage loan, and was heard over objection and taken with the case.

Rafael Fabregas related over this specific objection, that the note for $16,304.60 was executed on May 5, 1953, at which time, in addition to the signature of the J. H. Miller Manufacturing Company of Puerto Rico, it was signed and executed by John H. Miller and his wife, Shirley A. Miller, as guarantors. This note was repaid. Prior to the negotiation of this loan Fabregas had a number of conversations with John H. Miller and Max Miller, at which were

discussed the terms under which this loan would be granted; that he made it clear to Mr. Miller that Puerto Rico Industrial Development Company had gone quite far in approving assistance for his Company; that I was willing to entertain this loan and requested information on his personal financial statements; that we agreed that this loan would be used to meet payrolls and also to cover some rent that was due. We agreed on the terms of the loan, on the amount, etc., and upon discussing all those things we mentioned, I mentioned the fact that the chattel mortgage agreement had not been guaranteed by him, so he said, "Well, I don't know whether this is asking too much, but I would agree providing you incorporate into the guaranty document two conditions: (1) That in case of death this guarantee will not be binding, and (2) that in case you give me reasonable opportunity to dispose of the chattel mortgage property."

The letter of May 6th (in reference to this statement) does not mention that either the guaranty agreement or the inclusion of the two conditions were to be a part of the consideration for the $16,-304.60 loan. All this letter says is "We are including herewith, for your consideration, two copies of the document regarding your personal guarantee on the machinery loan". This in itself shows to my mind that as of the date of this letter there was no agreement between Puerto Rico Industrial Development Company and J. H. Miller as to whether they would ever agree on a guaranty agreement, because it was merely at this time submitted for his consideration and in fact at this time there had been no meeting of the minds as to any guaranty agreement, and if it can definitely be ascertained that there was no such meeting of the minds, then it cannot be said that the guarantee agreement was ever made as a promise or consideration of granting the $16,304.60 loan. John H. Miller says that the guaranty agreement was not any part of the consideration for granting this loan and in fact says that the guaranty agreement included in this

letter was not in fact the guaranty agreement that was signed on May 29, and no one disputes his statement. Miller says that he would never have executed the agreement contained in this letter because it did not contain the two provisions mentioned. When asked about this Mr. Fabregas said that as far as he could recall, the agreement was the same. This qualified answer further is convincing to me that no agreement had ever been reached as to the terms of a guaranty agreement, and hence at the time of the execution of the note of $16,304.60, no guaranty agreement had in fact been agreed upon. On cross examination he admitted that he wrote the letter as Finance Vice-President of Puerto Rico Industrial Development Company and addressed it to John H. Miller; that the note was executed prior to the date of the letter on May 5, and on May 6 set forth the conditions of the loan; that whatever is in this letter is right, is the correct truth of the matter.

Mr. John H. Miller stated that he had a conversation in the office of Mr. Fabregas with reference to a new loan of some $16,304.60 for the Puerto Rico Miller Company; that it was not true that the Puerto Rico Miller Company was badly in need of funds for the payroll and other debts; that at this time the Puerto Rico Miller Company was negotiating with the Walter E. Heller Company in Chicago for the purpose of installing a warehouse arrangement and a financing arrangement with Mr. Heller so that the Puerto Rico Company would not have the delay of shipping time to Quincy, Illinois, in order to get their funds for their finished stock. At this time we had cash on hand and wanted to discontinue the manufacturing of the items until the arrangement had been completed in full with Walter E. Heller Company in Chicago, and that the reason for the loan was to conserve the cash of Puerto Rico Miller Corporation; that the loan was made in order that the operation could be continued, and that the only guarantee that was discussed at the time of the making of the second loan was that it

would be guaranteed by myself and his wife, which we did; that the guaranty agreement that was enclosed in the letter of May 6th was not the guaranty agreement that was finally signed; that the new guaranty agreement was drawn by a lawyer for Mr. Fabregas on May 29, 1953; that he did sign the guaranty agreement on May 29, 1953, after it had been amended to suit him, and that at the time the guaranty agreement was executed on May 29, 1953, we were under no obligation to the Development Company whatsoever to make an agreement of any type with them; that it was only executed as a personal favor to Mr. Fabregas. When asked about the consideration of the sum of One Dollar in hand paid by the Puerto Rico Industrial Development Company to the undersigned, and of other good and valuable considerations, the receipt of which is hereby acknowledged, he stated that he did sign the agreement but that he did not receive the Dollar, and that there was no consideration for the loan; and that the only agreement for the $16,304.-60 loan were the six hereinafter stated conditions.

It appears very clear to me from reading of the letter dated May 6, 1953, that there were six provisions agreed upon concerning the $16,304.60 loan, viz.: (1) The amount to be $16,304.60. (2) The term 90 days from date when loan is disbursed. (3) Interest 6%. (4) The proceeds of the loan to be used as follows: (a) Payment to Puerto Rico Industrial Development Company for four months' rent due from J. H. Miller Manufacturing Co., a Corporation of Puerto Rico, out of the loan in question, (b) to cover three weeks' payroll ending May 1, May 8 and May 15, 1953, limited however to an amount that will never exceed the amount of $10,000. (5) The loan to be personally guaranteed by you and your wife, Shirley A. Miller, (6) the Corporation will continue paying rent on a monthly basis. The Company has decided to cancel the rent corresponding to the months of June and July, 1952. These were the only terms and conditions of the granting of the loan of $16,304.60.

If any provision had been made to guarantee the chattel mortgage loan it would have been included in the terms as dictated by Mr. Rafael Fabregas, Jr., Finance Vice President of Puerto Rico Industrial Development Company. All these provisions are included in the first paragraph of the letter. The second paragraph of the letter says this: "We are including herewith, for your consideration, two copies of the document regarding your personal guarantee on the machinery loan."

This paragraph discloses that there had been some discussion about a guarantee of the chattel mortgage (machinery) loan, but that it had not been any part of the consideration for the granting of the loan on May 5th. In fact, they say in this letter that they are submitting for his consideration two copies of a document regarding your personal guarantee on the machinery loan. This language is not broad enough to say at this time a guaranty agreement had been reached, or that there had been any meeting of the minds of the parties concerning the terms and provisions of a guaranty agreement for the machinery loan, and if the terms and provisions of a guaranty agreement had not been agreed upon it cannot be said that such an agreement was a part of the consideration for the granting of the second loan.

After hearing the evidence in the case, and having personally briefed myself as to the law of the case, I find that both under the law of Illinois and under the law of Puerto Rico, it is proper to introduce parol evidence to determine lack of or failure of consideration.

Under the law of Illinois this question is governed by Section 10 of the Negotiable Instruments Law. Illinois Revised Statutes 1957, Vol. 2, c. 98, § 10; Smith-Hurd Ill.Ann.Stat. Chap. 98, § 10, which is in the words and figures following:

"In any action upon a note, bond, bill, or other instrument in writing,

for the payment of money or property, or the performance of covenants or conditions, if such instrument was made or entered into without a good and valuable consideration, or if the consideration upon which it was made or entered into has wholly or in part failed, it shall be lawful for the defendant to plead such want of consideration, or that the consideration has wholly or in part failed; and if it shall appear that such instrument was made or entered into without a good and valuable consideration, or that the consideration has wholly failed, the verdict shall be for the defendant; and if it shall appear that the consideration has failed in part, the plaintiff shall recover according to the equity of the case: Provided, that nothing in this section contained shall be construed to affect or impair the right of any bona fide assignee of any instrument made assignable by this act, when such assignment was made before such instrument became due."

Under Title 19, Chap. 3, Sec 41, page 648, Laws of Puerto Rico Annotated, every negotiable instrument is only deemed to be prima facie evidence that it was issued for a valuable consideration, and under the same title and Chapter, Sec. 45, it is provided as follows: "Absence or failure of consideration is a matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise."

The Illinois statute authorizes oral evidence for want of consideration and I believe it is proper to say that the statutes of Puerto Rico also provide for the introduction of oral evidence as stated consideration is only prima facie consideration and want of it can be shown, and so has been the holding of the court of Puerto Rico in the case of Cintron v. Dominquez, 60 P.R.Rep. 465, wherein the law is announced as follows:

"Where a plaintiff in an action to recover on a promissory note has acquired the same after maturity, his claim is subject to the same defenses which the debtors might have availed of as against the original creditor, since, in the instant case, the court a quo found that the defendant debtors had proved their defenses of want of consideration for the promissory note, the action of debt brought must be dismissed."

Thus the issue, as I see it, is this: Is there a consideration for the guaranty agreement which was executed after and not as a part of the original agreement? In 24 Am.Jur., page 906, Sec. 50, Guaranty, the rule is announced as follows: "If the contract of guaranty appears to have been entered into, not as a part of a transaction which included the creation of the original or principal debt or obligation, but independent thereof, it. must be made to appear that the guarantor's promise was supported by a consideration which was distinct from that of the principal debt. A consideration is not found in a mere naked promise to pay the existing debt of another."

This statement is further elaborated in the 1958 Annual Pocket Part, Cum.Supp., Sec. 121, page 145, which says: "A mere recital of consideration in a written contract of guaranty is open to explanation by extrinsic evidence."

It is also stated in 38 C.J.S. Guaranty § 26, page 1164:

"A past consideration is one which has already served its purpose in a former transaction and is, therefore, not sufficient to support the promise of a guarantor; and, therefore, where the guarantor derives no benefit from the principal contract, and the contract of guaranty is made so long subsequent to the execution of the principal contract that it cannot be said to have been a part of the original transaction, and the guarantee has taken no action to his prejudice in reliance on the guaranty, the consideration for the principal contract is not sufficient; but

there must be a new and independent consideration to support the guaranty."

The law of Illinois is well settled on this proposition, and I quote from some of the cases on this question. Under Illinois law the liability of a guarantor must be strictly construed in his favor, giving guarantor the benefit of all reasonable doubts with respect thereto. Vilter Mfg. Co. v. Loring, 7 Cir., 136 F.2d 466, 468.

In the case of Bartholomae & Roesing Brewing and Malting Co. v. Motycka, 163 Ill.App. 238, 239, the guaranty agreement was as follows:

" 'I, Maria Motycka, in consideration of the sum of One Dollar ($1.00) in hand paid to me, and other good and valuable considerations, I hereby agree to be responsible for the indebtedness of Voclav Motycka to the Bartholomae and Roesing Brewing and Malting Company for the sum of Three Hundred and Sixty-three and 12-100 Dollars ($363.12), being for the balance due for beer and license to the aforesaid brewery while conducting a saloon at 640 Throop Street, Chicago, Illinois, October 5th, 1903. (Signed) Marie Motycka (Seal) Witness to Signature (Signed) John F. Seitz, August Pohling, John Vyduna.' [163 Ill. App., pps. 238, 239.] In a suit in assumpsit brought in June, 1905, the appellee filed its declaration, consisting of the common counts and two special counts, the first special count declaring on the foregoing writing, which is set out in that count in haec verba, and the second special count declaring on a parol promise of the same import. The appellant filed the general issue and to the first special count pleaded that the guaranty sued on was the special promise of defendant to pay the debt of another; that it was without consideration and, therefore, void. To the second special count she pleaded the statute of frauds. Appellee joined issue on these pleas, and on the trial the court instructed the jury to find the issue for the appellee and to assess its damages at $462.95, which it did, and judgment on the verdict followed. There is no claim that the proof shows a liability on the part of the appellant, except on the writing set out in the first special count. This writing was executed after the debt had been created, and after Voclav Motycka had given his note for it, and after he had made a payment of $2.00 on the note, and was no part of the transaction in which the debt was created, or in which the note was given. A guaranty made under that state of facts, if made without consideration, is not enforceable. The fact that it is under seal and recites a consideration does not prevent the want of consideration from being pleaded and proven. Gage v. Lewis, 68 Ill. 604; Rogers v. School Trustees [of Township 23] 46 Ill. 428; Bullen v. Morrison, 98 Ill.App. 669."

In Bullen v. Morrison, 98 Ill.App. 670 to page 672, it is stated:

"We are of the opinion that the learned trial judge was in error in excluding the proffered evidence. If the guaranty sued on was made at the same time as the lease on which it was endorsed, then it was a part of the same contract and needed no further or other consideration to support it than the lease itself. If, however, it was made at a different time and after the lease was fully executed and delivered to the plaintiff, then it was a separate and distinct contract from the lease, and it was necessary, before it could become a valid and binding contract, that there should have been a new and independent consideration from that of the lease. Judson v. Gookwin, 37 Ill. 286–[2]98; White v. Weaver, 41 Ill. 409; 2 Parsons on Contr., Sec. 2(n).

926

"But it is said that this guaranty being under seal, and stating that it is 'for value received', it can not be disputed that there was a consideration. This claim is untenable. Rev.Stat.Ill. Ch. 98, Sec. 9; Rogers v. School Trustees, [of School of Township 23], 46 Ill. 431–4; Gage v. Lewis, 68 Ill. 604; Morris v. Tillson, 81 Ill. 607–615; Crandall v. Willig, 166 Ill. 239 [46 N.E. 755]; Haven v. Chgo. Sash, etc., Co., 96 Ill.App. 92, and cases cited.

"The section of the statute referred to provides: 'In any action upon a note, bond, bill or other instrument in writing, for the payment of money or property, or the performance of covenants or conditions, if such instrument was made or entered into without a good and valuable consideration * * * it shall be lawful for the defendant to plead such want of consideration * * * and if it shall appear that such instrument was made or entered into without a good or valuable consideration * * * the verdict shall be for the defendant'.

"It seems to us too plain for argument that the guaranty sued on is within the language of this statute. It is an instrument in writing not only for the payment of money, but also binds the maker to the performance of the covenants of the lease on which the guaranty is indorsed. This view is supported by the cases of Rogers, Gage and Morris, cited supra.

"In the Gage case, which was an action upon a bond under seal, the Supreme Court held that under the statute above referred to, the defense that the consideration upon which the instrument was executed had failed, could be interposed; also that the consideration expressed in the instrument was not the real consideration which induced its execution.

"In the Morris case it was held that parol evidence was admissible to show that the consideration named in a lease was different from that stated; that it could be shown what the actual consideration was, the recitals in the lease not working an estoppel.

"In the Haven case, supra, which was a suit upon a bond guaranteeing the performance of a previous contract between the principals to the bond, we said:

" 'The rule in regard to guaranty is that if the guaranty is simultaneous with the execution of the contract guaranteed, the consideration for the contract is a consideration for the guaranty; but if the guaranty is so long subsequent to the execution of the contract guaranteed that it can not be said to be a part of the original transaction, the consideration for the contract will not support the guaranty. In such case there must be a new and independent consideration'.

"We held that the defense of no consideration was a proper one, and that because the bond was executed by the surety after the contract, the performance of which it guaranteed, had been executed and delivered several days prior to the signing of the bond by the surety, and no new or independent consideration being shown, the defense by the surety was complete. We see no reason why, under the statute, the principle of these decisions should not be applied to the guaranty here in suit."

In Gage v. Lewis, 68 Ill. 604, at page 613, the Court said:

"The rule at common law was, that fraud could not be pleaded or given in evidence as a defense to an action on a specialty, unless it vitiated the execution of the instrument, and that the defendant in such action was not allowed to show that

he was induced to execute it by fraudulent representations as to the nature or value of the consideration. This rule, however, is materially modified by our statute relating to Negotiable Instruments, by which it is provided that in actions upon bonds for the payment of money or the performance of covenants, as well as upon bills and notes, it may be set up as a defense that the instrument was executed without any good or valuable consideration, or that the consideration has failed in whole or in part.

"Under this statute it is competent to show that the defendant was induced to execute the instrument by false and fraudulent representations, as that is one mode of showing a failure of consideration. White v. Watkins, 23 Ill. [480] 482; Greathouse v. Dunlap, 10 Fed.Cas. page 1062, No. 5,742, 3 McLean [303], 304; Case v. Bangton [Boughton], 11 Wend. [N.Y.] 108; Leonard v. Bates, 1 Blackford [Ind.]. 172; Fitzgeral[d] v. Smith, 1 Ind. 310; Chambers v. Gaines, 2 [G.] Greene, [Iowa] 320. And, for this purpose it may be shown that the consideration expressed in the instrument is not the real consideration which induced its execution, but that it was, in fact, entirely different. G[reat]. W[estern] Ins. Co. v. Rees, 29 Ill. 272. In that case, speaking of the statute referred to, and admitting parol evidence to explain the consideration, it was said: 'It is impossible that this statute can be made effective in any other way than by receiving such proofs; and in receiving them, the old rule, that written contracts can not be varied by parol, becomes, in all such cases, ineffective.' "

Thus it is clear to me that under the law of Illinois, and under the law of Puerto Rico, parol evidence is admissible to show want of and failure of consideration, and I find as a fact, (1) that there was no consideration for the execution of the guaranty agreement, and (2) that therefore it is null and void, and that judgment should be entered in favor of the defendant.

It is so ordered.